# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE BELIZE BANK LIMITED,<br>60 Market Square, PO Box 364, Belize City,<br>Belize, Central America<br><br>        Petitioner,<br><br>        v.<br><br>THE GOVERNMENT OF BELIZE,<br>Attorney General, Attorney General's Ministry<br>New Administration Building, Belmopan,<br>Belize, Central America<br><br>        Respondent. | Case No. |

## PETITION TO CONFIRM FOREIGN
## ARBITRATION AWARD AND TO ENTER JUDGMENT

Petitioner The Belize Bank Limited ("Petitioner" or the "Bank"), by its undersigned attorneys, alleges as follows:

### Nature of the Proceeding

1. This is a proceeding pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207, to confirm a foreign arbitral award in accordance with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958[1] (the "New York Convention") and to have judgment entered thereon.

2. On January 15, 2013, an arbitral tribunal of three distinguished arbitrators in London, England, rendered a unanimous final award (the "Final Award") in the case

---

[1] 21 U.S.T. 2157 (entered into force December 29, 1970).

commenced by the Bank, as Claimant, against the Government of Belize, as Respondent, before the London Court of International Arbitration ("LCIA").

3. A copy of the Final Award dated January 15, 2013 is attached as Exhibit A to the accompanying Declaration of Louis B. Kimmelman, dated April 17, 2014 (the "Kimmelman Declaration"). The Final Award refers to a prior unanimous First Partial Award dated August 4, 2009 ("First Partial Award"), a copy of which is attached as Exhibit B to the Kimmelman Declaration.[2]

4. The Final Award was rendered based on an arbitration clause contained in a Settlement Deed entered into between the Bank and the Government of Belize dated March 23, 2007 ("Settlement Deed"). A copy of the Settlement Deed is attached as Exhibit C to the Kimmelman Declaration.

5. Petitioner now seeks confirmation and enforcement of the Final Award and entry of judgment based on that award.

**Parties**

6. Petitioner is a company incorporated in Belize with a registered office located at 60 Market Square, PO Box 364, Belize City, Belize, Central America.

7. Respondent is the Government of Belize ("Respondent" or "GOB"), a foreign state under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq*. The GOB's notice address is as follows: Attorney General, Attorney General's Ministry, New Administration Building, Belmopan, Belize.

---

[2] The First Partial Award recounts many of the facts regarding the dispute that led to the rendering of the Final Award.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction to confirm an arbitration award against a foreign state pursuant to 28 U.S.C. § 1330(a), which states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).

9. Under 28 U.S.C. § 1605(a)(1), the GOB is not entitled to immunity because it explicitly waived its immunity from suit with respect to its obligations under the Settlement Deed. Clause 9.5 of the Settlement Deed states:

> The Government irrevocably and unconditionally:
>
> (a) agrees that if the Bank brings proceedings against it or its assets in relation to this agreement no immunity from such legal proceedings (which will be deemed to include without limitation, suit, attachment prior to judgment, other attachment, the obtaining of judgment, execution or other enforcement) will be claimed by or on behalf of itself or with respect to its assets;
>
> (b) waives any such right of immunity which it or its assets now has or may in the future acquire;
>
> (c) consents generally in respect of any such proceedings to the giving of any relief or the issue of any process in connection with such proceedings including, without limitation, the making, enforcement or execution against any property whatsoever (irrespective of its use or intended use) of any award, order or judgment which may be made or given in arbitration proceedings or related enforcement proceedings.

Settlement Deed, Clause 9.5 (Kimmelman Decl., Ex. C). The GOB has therefore waived sovereign immunity as to this proceeding to confirm an arbitration award rendered in respect of the GOB's obligations under the Settlement Deed.

10. The GOB is also not entitled to immunity because this is an action under 28 U.S.C. § 1605(a)(6) to confirm an arbitration award that is governed by a treaty (the New York Convention) providing for the recognition and enforcement of arbitral awards to which the United States is a party.

11. The Final Award is governed by the New York Convention because: (i) the award arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any disputes arising from that relationship; (iii) the agreement provided for arbitration proceedings to take place in London, England, a signatory to the New York Convention; and (iv) at least one of the parties is not an American citizen. *See* 9 U.S.C. § 202; *Invista N. Am. S.À.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007) (listing the requirements for an award to fall under the New York Convention).[3]

12. This Court has personal jurisdiction over the GOB pursuant to 28 U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state shall exist as to every claim for relief as to which the district court has jurisdiction under 28 U.S.C. § 1330(a), where service has been made pursuant to 28 U.S.C. § 1608. As set forth above (paragraphs 8-11), the

---

[3] The fact that Belize is not a party to the New York Convention is irrelevant to whether the Final Award is governed by the New York Convention. *Belize Social Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731 n.3 (D.C. Cir. 2012), *cert. denied*, 133 S.Ct. 274 (2012) ("The fact that Belize is not a party to the New York Convention is irrelevant. If the place of the award is in a territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration." (citations and internal quotations omitted).

Court has subject matter jurisdiction under 28 U.S.C. § 1330(a), and Petitioner is serving the GOB pursuant to 28 U.S.C. § 1608.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## Facts

### The Settlement Deed

14. Between 2001 and 2004 the Bank advanced a series of loans to a company called Universal Health Service Company Limited ("UHS"), a provider of healthcare services in Belize. These loans were ultimately guaranteed by the GOB in December 2004. First Partial Award ¶¶ 98-99 (Kimmelman Decl., Ex. B).

15. In early 2007, it became clear that UHS could not service its debts to the Bank. *Id.* ¶ 100. Furthermore, the GOB was not willing to satisfy the debt which it had guaranteed in December 2004. *Id.* On March 23, 2007, the Bank and the GOB therefore entered into the March 2007 Settlement Deed and corresponding loan note (the "Loan Note"). *Id.* ¶ 100.

16. The Loan Note was Schedule 1 to the Settlement Deed. In clause 4.1 of the Settlement Deed, each party confirmed "that Schedule 1 forms an integral part of this agreement." Settlement Deed, Clause 4.1 (Kimmelman Decl., Ex. C). Pursuant to the terms of the Settlement Deed, the GOB was discharged from its liability under its guarantee (which

amounted to BZ$ 33,545,820[4] at that date) and the GOB executed and delivered to the Bank the Loan Note, and paid to the Bank the sum of one Belize Dollar.

17. Under the terms of the Loan Note, the GOB was bound to pay to the Bank the sum of BZ$ 33,545,820 together with interest thereon accruing daily and compounded monthly on demand or in any event no later than September 23, 2007.  *See* Loan Note, as attached to Settlement Deed (Kimmelman Decl., Ex. C).

## The Parties Agreed to Arbitrate All Disputes

18. The Settlement Deed contains a dispute resolution clause providing for arbitration of any disputes under the Rules of the London Court of International Arbitration ("LCIA").  Clause 9 of the Settlement Deed states:

> 9.2 Any dispute arising out of or in connection with this agreement including any question regarding its existence, validity or termination, which cannot be resolved amicably between the parties shall be referred to and finally resolved by arbitration under the London Court of International Arbitration (LCIA) Rules which Rules are deemed to be incorporated by reference under this clause.  The number of arbitrators shall be 3 (one appointed by each Party and the third appointed jointly by the two Parties' arbitrators).
>
> 9.3 The arbitral proceedings shall be conducted in the English language.
>
> 9.4 The seat or legal place of the arbitral proceedings shall be London, England.

*Id.*, Clause 9.

---

[4] BZ$ refers to Belize currency.

19.     Clauses 9.2 to 9.4 of the Settlement Deed constitute the arbitration agreement (the "Arbitration Agreement") between the GOB and the Bank. *Id.*, Clause 9.

### The GOB Breached the Settlement Deed

20.     The first monthly interest payment on the Loan Note fell due on April 23, 2007. However, the GOB failed to pay the first monthly interest payment. First Partial Award ¶ 108. The Bank notified the GOB in writing that failure to make payment constituted a default under the terms of the Loan Note. *Id.* ¶ 109. On May 9, 2007, the Bank wrote to the GOB calling an Event of Default and accelerating the full amount of the principal together with all accrued interest. *Id.* ¶ 110. The GOB did not respond and did not make any payment.

### Arbitration Before the LCIA

21.     The GOB's breach of the Settlement Deed resulted in the arbitration proceedings described below.

#### a.      The 2007 Arbitration

22.     In May 2007, the Bank commenced arbitration proceedings under the LCIA Rules against the GOB (the "2007 Arbitration") seeking, *inter alia*, a declaration that the Settlement Deed and Loan Note were valid, and payment of the sums due under the Loan Note. *Id.* ¶ 116 (Kimmelman Decl., Ex. B).

23.     On June 26, 2007, the GOB served a Response in the 2007 Arbitration. A copy of the GOB's response ("GOB Response") is attached to the Kimmelman Declaration as Exhibit D. The GOB offered no substantive defense to the Bank's claim and "acknowledged" that "the debt to the Claimant must be honoured." GOB Response ¶ 12 (Kimmelman Decl., Ex. D). The GOB failed to nominate an arbitrator and took no part in the 2007 Arbitration.

24. A Tribunal was duly constituted with Ms. Hillary Heilbron QC nominated by the Bank (and appointed by the LCIA) and Mr. Zachary Douglas appointed by the LCIA (given the GOB's failure to nominate). Mr. Toby Landau was agreed upon by the co-arbitrators as the third and presiding arbitrator and duly appointed by the LCIA.

25. On July 20, 2007, the arbitral tribunal in the 2007 Arbitration rendered a Partial Award on Jurisdiction in which it determined that it had jurisdiction over the dispute between the Bank and the GOB. *See* First Partial Award ¶ 119 (Kimmelman Decl., Ex. B).

      **b.**      **The 2008 Settlement Agreement and the termination of the 2007 Arbitration**

26. In about January 2008, the Bank and the GOB entered into a further settlement agreement (the "2008 Settlement Agreement"). As a result, the 2007 Arbitration was terminated and no final award was made.

27. In February 2008, following elections, the Government in Belize changed. On April 10, 2008, the GOB commenced proceedings before the Belize Supreme Court against the Bank relating to the 2008 Settlement Agreement, alleging that certain aspects of the agreement were invalid (the "Belize Civil Law Proceedings").

28. Because the filing of the Belize Civil Law Proceedings violated the Arbitration Agreement in the Settlement Deed, the Bank applied to the English Court in London on April 30, 2008 seeking an antisuit injunction to restrain the GOB from taking any further steps in the Belize court in violation of the Arbitration Agreement. *Id.* ¶ 157.

29. The Bank's application was heard on April 30, 2008. The English judge adjourned the matter until May 6, 2008 to allow notice of the application to be given to the GOB so that it had an opportunity to participate in the hearing. *Id.*

30. The GOB did not appear before the English Court, but instead obtained *ex parte* relief from the Belize Supreme Court on May 2, 2008, restraining the Bank from taking any steps other than in the courts of Belize. *Id.* ¶ 158.

31. At the hearing before the English Court on May 6, 2008, the judge ordered that the GOB should be restrained from continuing the Belize Civil Law Proceedings. *Id.* ¶ 159.

32. To resolve this impasse between the courts of Belize and England, the Bank applied to the Belize Supreme Court on May 9, 2008, to set aside the Belize injunction and to obtain a stay of the Belize court proceedings because of the parties' agreement to arbitrate the issues in dispute. The Belize Supreme Court granted the Bank's application on July 4, 2008. *Id.* ¶ 160.

    c.  **The first phase of the 2008 Arbitration**

33. Following the decision of the Belize Supreme Court on July 4, 2008, the Bank commenced the 2008 Arbitration by filing a Request for Arbitration dated July 9, 2008. The Bank claimed that the 2008 Settlement Agreement was validly entered into on behalf of the GOB and that the GOB owed sums to the Bank under the terms of the 2008 Settlement Agreement. *Id.* ¶ 336(c). Alternatively, the Bank asserted that if the 2008 Settlement Agreement was found to be invalid, the Bank was entitled to damages based on the GOB's breach of the Loan Note attached to the Settlement Deed. *Id.* ¶ 6.

34. The GOB continued its policy of non-participation during this phase of the 2008 Arbitration, and in September 2008 the LCIA appointed the same arbitral tribunal as in the 2007 Arbitration. *Id.* ¶ 27.

35. Both the First Partial Award and the Final Award make clear that, although the GOB did not participate in the arbitration proceedings, the GOB was provided with

9

copies of all correspondence in the 2008 Arbitration. Moreover, each of the arbitral tribunal's procedural orders expressly granted each party the right to apply to the arbitral tribunal for amendment of the procedural orders or for further procedural orders. *Id.* Part II.

36. The first phase of the 2008 Arbitration was concluded with the issuance of the First Partial Award, dated August 4, 2009. The arbitral tribunal concluded that it had jurisdiction over the Bank's claims arising out of the 2008 Settlement Agreement. *Id.* ¶ 227. The arbitral tribunal also concluded that part of the 2008 Settlement Agreement was void. *Id.* ¶ 328. However, the arbitral tribunal made no other findings regarding the 2008 Settlement Agreement and reserved for subsequent consideration all other issues including the Bank's alternative claims under the Settlement Deed and Loan Note. *Id.* ¶¶ 10 and 336(d).

### d. The Belize Public Law Proceedings

37. As a result of the First Partial Award, the Bank was ready to pursue its alternative claims in the 2008 Arbitration, including a declaration that the Settlement Deed and Loan Note were valid and an award for the amount due under the Loan Note.

38. However, the validity of the Settlement Deed and Loan Note were being litigated in proceedings that had been commenced in May 2007 before the Belize Supreme Court by various public interest litigants (the "Belize Public Law Proceedings"). *Id.* ¶¶ 111-114. The central allegation in the Belize Public Law Proceedings was that the Prime Minister of the GOB was not authorized to enter into these agreements. As a result, the arbitration claims relating to the Loan Note in the 2008 Arbitration were stayed pending resolution of the Belize Public Law Proceedings. Final Award ¶ 47 (Kimmelman Decl., Ex. A).

39. The Belize Public Law Proceedings concluded when the case was appealed to the highest court of appeal in Belize at that time, the Judicial Committee of the Privy

Council in London ("Privy Council"). In a judgment dated October 20, 2011, the Privy Council held that the Loan Note was lawful. *Id.* ¶ 48.

### e. The second phase of the 2008 Arbitration

40. After the Privy Council's decision in the Belize Public Law Proceedings, the second phase of the 2008 arbitration began. *Id.* ¶ 48.

41. By letter dated December 2, 2011, the GOB informed the Bank, the arbitral tribunal and the LCIA that the GOB would now participate in the 2008 Arbitration. *Id.* ¶ 15.

42. Shortly after this letter, the GOB objected to Mr. Landau's continued service as president of the arbitral tribunal. On February 24, 2012, Mr. Landau resigned as president of the arbitral tribunal. *Id.* ¶ 18.

43. On March 26, 2012, the GOB challenged Mr. Douglas as arbitrator. *Id.* ¶ 20.

44. On March 27, 2012, the LCIA notified the parties that Ms. Heilbron and Mr. Douglas had selected Mr. Yves Fortier, CC, QC as the new President of the Tribunal. The GOB then challenged the selection of Mr. Fortier on the basis that if the GOB's challenge to Mr. Douglas were successful, then the GOB would be entitled to nominate an arbitrator who, together with Ms. Heilbron, would jointly select the President of the arbitral tribunal. *Id.* ¶¶ 21-22.

45. On June 1, 2012, the LCIA issued a decision denying the challenges to Mr. Douglas and Mr. Fortier. *Id.* ¶ 23. A copy of the LCIA decision is attached as Exhibit E to the Kimmelman Declaration.

46. Following the LCIA's decision, the GOB did not reply to any communications from the arbitral tribunal or the Bank. As the Final Award states: "Notwithstanding this silence, thereafter every communication from the Tribunal, the Claimant and the LCIA Registry continued to be addressed to the Respondent's legal representatives." *Id.* ¶ 24.

**The Final Arbitration Award**

47. On January 15, 2013, the arbitral tribunal rendered a Final Award in favor of Petitioner. The arbitral tribunal found the Loan Note valid and enforceable and that the GOB had breached the Loan Note. The Final Award states:

(a) the Claimant's claim under the March 2007 Loan Note and the issue of the enforceability and/or legality of the 2008 Settlement Agreement lie within the scope of this Arbitral Tribunal's jurisdiction;

(b) the 2008 Settlement Agreement is unenforceable in its entirety;

(c) the March 2007 Loan Note is valid and binding;

(d) the Respondent [GOB] is in breach and in default of the March 2007 Loan Note;

(e) the Respondent [GOB] is ordered to pay to the Claimant under the March 2007 Loan Note the sum of BZ$36,895,509.46 (as at 7 September 2012) plus interest at 17% compounded on a monthly basis from 8 September 2012 until the date of payment;

(f) in relation to the First Phase of this arbitration, the Respondent [GOB] is ordered to pay to the Claimant [Bank] the arbitration costs of £78,943.30;

(g) in relation to the Second Phase of this arbitration, the Respondent [GOB] is ordered to pay to the Claimant [Bank] the sum of £457,874.41 representing the arbitration costs, and a portion of its legal and management costs;

(h) all other claims are dismissed.

*Id.* ¶ 144.

48. On January 28, 2013, the Bank requested immediate payment of the full amount of the Final Award. The GOB did not respond. Nor has it paid any part of the amount due to the Bank under the Final Award. Thus, the GOB has failed to comply with the Final Award.

49. The Final Award set out the amount of interest owed by the GOB up to and including September 7, 2012. *Id.* ¶ 144(e).

50. Under the terms of the Loan Note and the Final Award, interest accrues at 17% per annum, compounded monthly "from 8 September 2012 until the date of payment." *Id.*

## CLAIMS FOR RELIEF
### (9 U.S.C. § 207)

### First Claim for Relief
### (Confirmation of the Award)

51. Petitioner repeats and realleges each and every allegation contained in paragraphs 1 through 50, above, inclusive, and incorporates them herein by reference.

52. The United States is a contracting party to the New York Convention, subject to the reciprocity reservation set forth in Article I of the New York Convention.

53. The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act.

54. The Final Award is governed by the New York Convention because it was rendered in the United Kingdom, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act. *See* 9 U.S.C. § 202.

55. The Final Award included declaratory relief and an award of damages in Belize Dollars and UK Pounds.

56. The Federal Arbitration Act provides that the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added).

57. None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention applies to the Final Award.

58. Therefore, the Final Award should be confirmed pursuant to 9 U.S.C. § 207 and judgment should be entered for the relief awarded by the arbitral tribunal. The monetary portion of the judgment should be entered in United States dollars.

**Second Claim for Relief**
**(Prejudgment Interest on Amounts Due under the Award)**

59. Petitioner repeats and realleges each and every allegation contained in paragraphs 1 through 58, above, inclusive, and incorporates them herein by reference.

60. The Final Award includes interest on sums owed up to September 7, 2012.

61. Under the terms of the Loan Note and the Final Award, interest accrues at the rate of 17% per annum, compounded monthly, until the date of payment.  Final Award ¶ 144(e) (Kimmelman Decl., Ex. A).

62. Therefore, the Court should award Petitioner prejudgment interest on all amounts awarded under the Final Award from September 8, 2012 until the entry of judgment as provided in the Final Award at the agreed-upon rate of 17% per annum, compounded monthly.

WHEREFORE, Petitioner respectfully requests an order:

(a) confirming the relief granted in the Final Award;

(b) entering judgment in favor of Petitioner and against Respondent in accordance with the Final Award;

(c)    entering judgment for Petitioner and against Respondent for the monetary portion of the Final Award in United States dollars;

(d)    awarding prejudgment interest, from September 8, 2012 until the entry of judgment at the rate specified in the Loan Note (17% per annum, compounded monthly); and

(e)    granting such other and further relief as the Court deems just and proper.

Dated: April 17, 2014

SIDLEY AUSTIN LLP

By: /s/ Kristin Graham Koehler
Kristin Graham Koehler
DC Bar Number: 464422
1501 K Street NW
Washington, DC 20005
kkoehler@sidley.com
Telephone: (202) 736-8359
Facsimile: (202) 736-8711

Louis B. Kimmelman
Dana C. MacGrath
787 Seventh Avenue
New York, New York 10019
bkimmelman@sidley.com
dmacgrath@sidley.com
Telephone: (212) 839-5200
Facsimile: (212) 839-5599

*Counsel for Petitioner*
The Belize Bank Limited