**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| THE BELIZE BANK LIMITED ) | |
| ) | |
| ) | |
| Petitioner, ) | Civil Action No. 1:14-CV-00659 (BAH) |
| ) | |
| v. ) | |
| ) | |
| THE GOVERNMENT OF BELIZE ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |
| ) | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
RESPONDENT'S MOTION TO DISMISS THE PETITION**

CREIGHTON R. MAGID (Bar No. 476961)
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
(202) 442-3555
magid.chip@dorsey.com

JUAN C. BASOMBRIO (motion for
admission pro hac vice to be filed)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
(714) 800-1405
basombrio.juan@dorsey.com

Counsel for Respondent
**GOVERNMENT OF BELIZE**

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

III.    ARGUMENT .......................................................................................................7

        A.      THE PETITION MUST BE DISMISSED BECAUSE GOB IS
                ENTITLED TO FOREIGN SOVERIGN IMMUNITY AND THE
                COURT LACKS SUBJECT MATTER JURISDICTION. ....................................7

                1.      FSIA is the Sole Basis for Obtaining Subject-Matter Jurisdiction
                        Over Claims Against a Foreign State...........................................................7
                2.      The Arbitration Exception Cannot Apply Because the Subject
                        Agreements Cannot be Imputed to GOB for Purposes of the FSIA
                        Determination. ...............................................................................................8
                3.      The Privy Council Did Not Hold that the Former Prime Minister
                        Complied with Section 114 of the Belizean Constitution..........................13
                4.      The FAA's Severability Rule is Inapplicable to the FSIA
                        Determination. ..............................................................................................14
                5.      The Arbitration Exception Also Cannot Apply Because the
                        Convention Does Not Apply to GOB. .........................................................18
                6.      GOB Did Not Waive Its Foreign Sovereign Immunity. ............................21

        B.      THE PETITION SHOULD BE DISMISSED ON *FORUM NON
                CONVENIENS* GROUNDS. ..............................................................................23

                1.      Belize is an Adequate Alternative Forum. .................................................23
                2.      The Private Interest Factors Favor the Belizean Forum. ...........................24
                3.      The Public Interest Factors Also Favor the Belizean Forum....................25

        C.      THE PETITION MUST BE DISMISSED FOR LACK OF PERSONAL
                JURISDICTION. ....................................................................................................26

        D.      THE PETITION SHOULD BE DISMISSED ON INTERNATIONAL
                COMITY GROUNDS. ...........................................................................................30

        E.      THE MOTION TO DISMISS MUST BE DECIDED FIRST.  GOB HAS
                A RIGHT TO AN INTERLOCUTORY APPEAL PRIOR TO
                REACHING THE MERITS. ...................................................................................33

IV.     CONCLUSION....................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. Magyar Nemzet Bank*,
   692 F.3d 661 (7th Cir. 2012) ...................................................................................22

*Agudas Chasidei Chabad of U.S. v. Russian Fed.*,
   528 F.3d 934 (D.C. Cir. 2008) ................................................................................23

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ................................................................................................10

*Allfreight Worldwide Cargo, Inc. v. Ethiopian Airlines Ent.*,
   307 Fed. Appx. 721 (4th Cir. 2009) ..........................................................................9

*American Dredging Co. v. Miller*,
   510 U.S. 443 (1994) ................................................................................................23

*API, Inc. Asbestos Settlement Trust v. Atlantic Mut. Ins. Co.*,
   2011 WL 5244669 (D.Minn. 2011) .......................................................................33

*In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz
   of Ukraine*,
   311 F.3d 488 (2d Cir. 2002) ...................................................................................23

*Argentine Rep. v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ..................................................................................................7

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct.*,
   --U.S. --, 134 S.Ct. 568 (2013) ..............................................................................24

*Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*,
   441 Fed. Appx. 822 (3d Cir. 2011) (unpublished) .................................................16

*Avero Belgium Ins. v. Am. Airlines, Inc.*,
   423 F.3d 73 (2d Cir. 2005) .....................................................................................20

*BCB Holdings Ltd. et al. v. Att'y General of Belize*,
   [2013] CCJ 5 (AJ) (26 July 2013) ............................................................................6

*The Belize Bank Limited v. The Association of Concerned Belizeans and Others*,
   Privy Council Appeal No. 0096 of 2010, [2011] UKPC 35, *available at* 2011
   WL 4966310 (20 Oct. 2011) ..................................................................................13

*Belize Social Development Limited. v. Government of Belize*,
   668 F.3d 724 (D.C. Cir. 2012), *cert. denied, --* U.S. -- , 133 S.Ct. 274 (2012) ......................20

*Belize Social Development Ltd. v. Government of Belize,*
   -- F.Supp.2d --, 2013 WL 6502416 (D. D.C. 2013) ........................................14, 15, 16, 20, 23

*BP Chemicals Ltd. v. Jiangsu Sopo Corp. (Group) Ltd.,*
   420 F.3d 810 (8th Cir. 2005) .......................................................................................33

*Buckeye Check Cashing, Inc. v. Cardegna,*
   546 U.S. 440 (2006)....................................................................................................14

*Chacon v. Eighty-Nine Bales of Cochineal,*
   1 Brock 478 F.Cas. 390, 393 (Cir. Ct. D. Va. 1821) .............................................18

*Chan v. Korean Air Lines, Ltd.,*
   490 U.S. 122 S.Ct. 1676, 104 L.Ed.2d 113 (1989)...............................................15

*China Minmetals Import and Export Co., Ltd. v. Chi Mei Corp.,*
   334 F.3d 274 (3d Cir. 2003)........................................................................................17

*Creighton Ltd v. Gov't of the State of Qatar,*
   181 F.3d 118 (D.C. Cir. 1999) ...........................................................19, 20, 21, 28, 29, 30

*D.H. Blair & Co., Inc. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006)..........................................................................................25

*Daimler AG v. Bauman,*
   -- U.S. --, 134 S.Ct. 746 (2014) .................................................................................26

*Dale v. Colagiovanni,*
   443 F.3d 425 (5th Cir. 2006) ........................................................................................9

*De Sanchez v. Banco Central de Nicaragua,*
   770 F.2d 1385 (5th Cir. 1985) ....................................................................................19

*Doe v. Exxon Mobil Corp.,*
   654 F.3d 11 (D.C. Cir. 2011), *vacated on other grounds,* 527 Fed. Appx. 7
   (D.C. Cir. 2013) ..........................................................................................................18

*EduMoz, LLC v. Republic of Mozambique,*
   968 F.Supp.2d 1041 (C.D.Cal. 2013) .......................................................................10

*Figueiredo Ferraz E Engenharia de Projecto Ltda. v. Rep. of Peru,*
   665 F.3d 384 (2d Cir. 2011)...............................................................................24, 25, 32

*First Inv. Corp. of Marshall Islands v. Fuji Mawei Shipbuilding, Ltd.,*
   703 F.3d 742 (5th Cir. 2012) ................................................................................27, 28

*Flexfab, L.L.C. v. United States,*
   424 F.3d 1254 (D.C.Cir. 2005) ..................................................................................22

*Flores v. S. Peru Copper Corp.*,
    414 F.3d 233 (2d Cir. 2003)..................................................................19

*Flores-Nova v. Attorney Gen.*,
    652 F.3d 488 (3d Cir. 2011)..................................................................19

*GSS Group Ltd. v. Nat'l Port Auth.*,
    680 F.3d 805 (D.C. Cir. 2012)..............................................................27

*Gulf Oil Co. v. Gilbert*,
    330 U.S. 501 (1947).............................................................................25

*Hanson v. Denckla*,
    357 U.S. 235 (1958).............................................................................29

*Haver v. Yaker*,
    75 U.S. (9 Wall.) 32 (1869)................................................................18

*Haywood v. Drown*,
    556 U.S. 729, 129 S.Ct. 2108 (2009)...................................................33

*Helvering v. Stockholms Enskilda Bank*,
    293 U.S. 84 (1990)...............................................................................10

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).......................................................26, 27, 28, 29

*J. McIntyre Machinery, Ltd. v. Nicastro*, -- U.S. -- ,
    131 S.Ct. 2780 (2011).........................................................................27

*Kilburn v. Socialist People's Libyan Arab*,
    376 F.3d 1123 (D.C.Cir. 2004)............................................................33

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    932 F.2d 1475 (D.C. Cir. 1991)..........................................................18

*In Re Korean Air Lines Disaster of September 1, 1983*,
    829 F.2d 1171 (D.C.Cir.1987).............................................................15

*Koster v. (American) Lumbermens Mut. Casualty Co.*,
    330 U.S. 518 (1947).............................................................................24

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949)...............................................................................9

*Lawton v. Republic of Iraq*,
    581 F. Supp. 2d 43 (D. D.C. 2008) .....................................................15

*Limtiaco v. Camacho*,
  549 U.S. 483 (2007)..................................................................................10

*In re Maxwell Comm. Corp.*,
  93 F.3d 1036 (2d Cir. 1996).....................................................................32

*MBI Group, Inc. v. Credit Foncier Du Cameroun*,
  616 F.3d 568 (D.C. Cir. 2010) .................................................................25

*McKesson Corp. v. Islamic Republic of Iran*,
  672 F.3d 1066 (D.C. Cir. 2012) ..................................................................7

*Moses H. Cone Mem. Hosp. v. Mercury Const. Co.*,
  460 U.S. 1 (1983).....................................................................................14

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't. of Transp.*,
  724 F.3d 230 (D.D.C. 2013) .....................................................................18

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) ....................................................................7

*Peterson v. Royal Kingdom of Saudi Arabia*,
  416 F.3d 83 (D.C. Cir. 2005) ...................................................................16

*\*Phaneuf v. Rep. of Indonesia*,
  106 F.3d 302 (9th Cir. 1997) ...............................8, 9, 10, 12, 13, 17, 22

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).................................................................................24

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) .......................................................20, 26, 27

*Princz v. Federal Republic of Germany*,
  998 F.2d 1 (D.C. Cir. 1993) (per curiam) ...............................................34

*Productos Mercantiles etc. v. Faberge USA, Inc.*,
  23 F.3d 41 (2d Cir. 1994)..........................................................................26

*Rep. of Argentina v. NML Capital, Ltd.*,
  134 S. Ct. 2250 (2014).................................................................15, 16, 27

*Rep. of Austria v. Altmann*,
  541 U.S. 677 (2004).................................................................................11

*S & Davis Int'l, Inc. v. The Republic of Yemen*,
  218 F.3d 1292,1297 (11th Cir. 2000) ......................................................34

*Santissima Trinidad & St. An De*,
   20 U.S. 283 (1822)................................................................................................18

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)................................................................................................7

*Scandinavian Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*,
   668 F.3d 60 (2d Cir. 2012)....................................................................................17

*Schooner Exchange v. M'Faddon*,
   11 U.S. (7 Cranch) 116 (1812)..............................................................................18

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
   549 U.S. 422 (2007)..........................................................................................23, 24

*Snowden v. Checkpoint Check Cashing*,
   290 F.3d 631 (4th Cir. 2002) ................................................................................17

*Soudavar v. Islamic Rep. of Iran*,
   67 Fed. Appx. 618 (D.C. Cir. 2003) (unpublished) ..............................................16

*Steel Co. v. Citizens for Better Environment*,
   523 U.S. 83 (1998)................................................................................................33

*In re Terrorist Attacks on Sept. 11, 2001*,
   538 F.3d 71 (2d Cir. 2008)....................................................................................15

*TJGEM LLC v. Rep. of Ghana*,
   -- F. Supp.2d --, 2013 WL 6857988 (D.D.C. 2013) ............................................10

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
   411 F.3d 296 (D.C. Cir. 2005) ........................................................................23, 24

*Tobar v. U.S.*,
   639 F.3d 1191 (9th Cir. 2011) ..............................................................................19

*United States v. Lee*,
   106 U.S. 196 (1882)..............................................................................................22

*United States v. Moats*,
   961 F.2d 1198 (5th Cir. 1992) ........................................................................33, 34

*Velasco v. Gov't of Indonesia*,
   370 F.3d 392 (4th Cir. 2004) ............................................................................9, 12

*Verlinden B.V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1983)........................................................................................15, 16

*Virginia Office for Protection and Advocacy v. Stewart*,
 -- U.S. --, 131 S.Ct. 1632 (2011) ........................................................................28

*Weltover*,
 504 U.S. at 619-20 .............................................................................................26

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ...........................................................................................29

**Statutes**

9 U.S.C. § 1 .................................................................................................................14

28 U.S.C. § 1602 ...........................................................................................................1

28 U.S.C. § 1605(a)(1) ...............................................................................................21

28 U.S.C. § 1605(a)(6) ...............................................................................................15

28. U.S.C. § 1605(a)(6)(A)-(D) ....................................................................................8

**Other Authorities**

H.R. Rep. No. 94-1487 at *13 .....................................................................................19

H.R. Rep. No. 94-1487 at *9 (1976).....................................................................28, 29

U.N. website, http://www.uncitral.org/uncitral/en/uncitral_texts/................................19

I.      INTRODUCTION

The Belize Bank Limited ("Bank") has filed a Petition to confirm an award rendered in its favor, and against Petition, the Government of Belize ("GOB") by the London Court of International Arbitration ("LCIA") and to have judgment entered on the LCIA award.

The LCIA award is based on purported agreements executed by a former Belizean Prime Minister, who, lacking National Assembly authorization, was without actual authority to enter into the agreements on behalf of GOB. Consequently, the Guarantee, Settlement Deed and Loan Note are void *ab initio*, do not constitute acts by GOB and cannot be imputed to GOB, rendering the arbitration award invalid and unenforceable.  The Petition should be denied on the following grounds:

First, the Petition must be dismissed for lack of subject matter jurisdiction because GOB has foreign sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA").  Although the Bank argues that the FSIA's arbitration exception to foreign sovereign immunity applies, the exception is inapplicable here.  The arbitration exception requires the existence of an agreement to arbitrate by the foreign state.  However, the former Prime Minister who signed the subject agreements lacked actual authority to enter into the agreements, meaning that there is no agreement to arbitrate by the foreign state.  (For the same reason, the FSIA waiver exception is inapplicable.)  Moreover, the arbitration exception also requires that an international arbitration convention be applicable to the foreign state.  The Bank seeks to confirm the arbitration award under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ("Convention").  The Convention does not apply to GOB, however, because GOB has not ratified it.

Second, the Petition should be dismissed on *forum non conveniens* ("FNC") grounds. The FNC doctrine applies to a confirmation action under the Convention. This is a Belizean dispute. GOB allegedly guaranteed the Bank's loan to a Belizean entity, which resulted in the arbitration award against GOB. Belize is an adequate alternative forum; indeed, there is a pending confirmation action there between GOB and the Bank. Further, the private and public factors favor the Belizean forum. The Supreme Court has stated that courts may dismiss on FNC grounds when doing so avoids more difficult foreign sovereign immunity and jurisdictional questions. This court should do so here.

Third, the Petition should be dismissed for lack of personal jurisdiction. The FSIA takes the place of the state long-arm statute in the personal jurisdiction analysis, but not the Due Process analysis. Although foreign states are not "persons," and are therefore not entitled to Due Process protection, the minimum contact requirements of Due Process should be extended to foreign states on the basis of international comity. Applying such standard here, there is a lack of personal jurisdiction over GOB.

Fourth, the Petition should be dismissed based on international comity grounds. As discussed above, this is an entirely Belizean matter involving an alleged agreement by a former Prime Minister to guarantee, illegally, the debt of a Belizean entity. There is pending litigation in Belize between the parties. Belize has a greater public interest in this dispute than does the United States. Further, if this Court were to confirm the arbitration award, there would be a direct conflict with existing Belizean law, which also requires abstention on comity grounds.

For these reasons, the Petition should be dismissed.[1]

---

[1]   Concurrently with this motion to dismiss, GOB is also filing a preliminary opposition to the Petition, given that confirmation actions are summary proceedings. GOB also is requesting, as part of its preliminary opposition, an opportunity to conduct limited discovery. Specifically,

## II.     FACTUAL BACKGROUND

The Bank seeks to confirm an arbitration award under the Convention.  Petition at ¶ 1.
The award was rendered by the LCIA on January 15, 2013.  *Id.* at ¶ 47.  The award grants
monetary damages to the Bank, and against GOB, based on a purported Settlement Deed and
Loan Note allegedly executed by GOB.  *Id.*

However, the former Belizean Prime Minister, who signed the Settlement Deed and Loan
Note, as well as a prior Guarantee on which the two other documents are based, lacked actual
authority to execute any of these documents; in order to bind GOB, the former Prime Minister
would have had to have received National Assembly authorization, which was never obtained.
As such, the Guarantee, Settlement Deed and Loan Note are void *ab initio*, do not constitute acts
by GOB and cannot be imputed to GOB.  The arbitration award is therefore invalid and
unenforceable.

### Secrecy Surrounding the Initial Guarantee

On December 9, 2004, the then Prime Minister and Minister of Finance of Belize Said
Musa signed a 'Guarantee and Postponement of Claim Agreement' ("Guarantee") in favor of the
Bank, a private entity, which purported to guarantee the payment to the Bank of all debts and
liabilities owed the Bank at any time by Universal Health Services Company Limited ("UHS").
This Guarantee was the substratum of a Settlement Deed and Loan Note of March 23, 2007,
expressed to be between the Bank and GOB that was the basis for the subject arbitration award.

---

GOB is opposing confirmation under the Convention on the grounds, *inter alia*, that the arbitral
tribunal was not constituted in accordance with the subject arbitration clause (even if the clause
were considered valid), and that the LCIA improperly refused to investigate whether an arbitrator
on the panel had a conflict of interest or was not impartial (based on substantial evidence
presented by GOB to the LCIA) and improperly refused to disqualify said arbitrator from the
panel.

Declaration of Joseph Waight, Belizean Financial Secretary ("Waight Decl.") at ¶ 3.  The

Guarantee contained the following confidentiality clause:

> (16) The terms of this guarantee and those contained in all other
> agreements related hereto, and all information contained or referred to
> herein or ancillary hereto, are strictly confidential and shall not be
> disclosed by the Guarantor without first having obtained the written
> consent of the Company (i.e., "Bank").

*Id.* at ¶ 4.

Therefore, the Guarantee was not in the public domain until early 2007, when a private

entity, Association of Concerned Belizeans ("ACB"), wrote to the Ministry of Finance,

requesting access to the Guarantee under the Freedom of Information Act.  Despite diligent

searches, no copy of the Guarantee could be found in the files of the Ministry of Finance and no

one in GOB knew about it.  Subsequently, a copy of the Guarantee was obtained from the Bank;

the government then in power took the position that the Guarantee was an 'exempt document'

under the Freedom of Information Act and would not be disclosed to the public.  Waight Decl. at

¶ 5.

Public Uproar Over the Guarantee

When the Guarantee became public, there was public outcry and strong disapproval of

the prior government's action to purport to guarantee the debt of a private entity like UHS.  The

situation was aggravated when it became known that to satisfy the Guarantee, the government

had assumed the debt of UHS to the Bank by executing the Loan Note.  ACB filed suit in the

Belize Supreme Court challenging the legality of the Guarantee and Loan Note.  Waight Decl. at

¶ 6.

To forestall a successful legal challenge to the Guarantee and the Loan Note, the former

Prime Minister introduced a "Loan Motion" in the Belizean House of Representatives on May

18, 2007, with a view to validating *ex post facto* the Guarantee and the Loan Note.  As the record

of proceedings shows, there was pandemonium in the House as the Opposition members were

strongly opposed to the Loan Motion.  The situation was worse outside the Belizean National

Assembly building where a large crowd of people had gathered to protest against the Loan

Motion.  The police in riot gear had to use tear gas to disperse the crowd.  The force of public

opinion was such that the former Prime Minister withdrew the subject Loan Motion.  Waight

Decl. at ¶ 7.

Guarantee, Settlement Deed and Loan Note
Are an Illegal Charge on the Consolidated Revenue Fund

The Guarantee, Settlement Deed and Loan Note each constitute an illegal and

unconstitutional charge on the Consolidated Revenue Fund; under Section 114 of the Belizean

Constitution, National Assembly approval was required if they were to be lawful.  The reason is

that these documents require GOB to pay monies, which in this case would have been done out

of the Consolidated Revenue Fund.  However, the National Assembly never enacted any law

authorizing the Guarantee, Settlement Deed or Loan Note.  As such, the Guarantee, Settlement

Deed and Loan Note are null and void, *ab initio,* because the former Prime Minister and Finance

Secretary lacked actual authority to execute said documents.  Waight Decl. at ¶ 8.  GOB also

submits the declaration of Gian C. Gandhi, Legal Advisor to the Belizean Ministry of Finance

("Gandhi Decl."), which provides further details supporting the fact that the former Prime

Minister lacked authority.  *Id.* at ¶¶ 2-9.

Enforcement of the Award Would be Contrary to Public Policy

The requirements of Section 114 of the Belizean Constitution support the Belizean public

policy of Separation of Powers, which also is a cornerstone of the United States Constitution.

Provisions such as Section 114 serve as checks and balances on the acts of the Executive Branch

5

by repositing authority over the public purse in the directly-elected Legislative Branch. Accordingly, Belize has a strong public interest in this dispute, which involves constitutional issues such as the former Prime Minister's authority.  Waight Decl. at ¶ 9.

<u>This Was Not the Only Act by the Prior Prime Minister Without Authority</u>

Unfortunately, this is not the only example of former Prime Minister Said Musa purporting to act without authority.

The Caribbean Court of Justice ("CCJ"), which replaced the Privy Council as the ultimate appellate body for Belizean courts, recently held that former Prime Minister Musa also executed another agreement with another private party without actual authority, and that the resulting arbitration award against GOB was therefore unenforceable on public policy grounds:  *BCB Holdings Ltd. et al. v. Att'y General of Belize*, [2013] CCJ 5 (AJ) (26 July 2013).  Gandhi Decl. at ¶ 10.

<u>Prior Belizean Confirmation Action by the Bank</u>

On July 31, 2013, the Bank instituted an action against the Attorney General of Belize before the Supreme Court of Belize, Claim No. 418 of 2013, seeking to confirm the subject arbitration award pursuant to the Arbitration Act of Belize.  GOB has responded to this Belizean action and is opposing confirmation of the award.  Among other things, GOB is arguing that the award should not be confirmed because (1) the Guarantee, Settlement Deed and Loan Note are null and void, *ab initio,* because the former Prime Minister and Finance Secretary lacked actual authority to execute said documents; and (2) the composition of the tribunal was not in accordance with the parties' agreement and the LCIA refused to investigate and remove a member of the tribunal where there was an appearance of partiality or conflict of interest. Waight Decl. at ¶ 10.

III.    ARGUMENT

A.    THE PETITION MUST BE DISMISSED BECAUSE GOB IS ENTITLED TO FOREIGN SOVEREIGN IMMUNITY AND THE COURT LACKS SUBJECT MATTER JURISDICTION.

The Petition must be dismissed for lack of subject matter jurisdiction because GOB has foreign sovereign immunity under the FSIA.  The FSIA's arbitration exception does not apply for two reasons:  (1) the former Prime Minister lacked actual authority and, thus, there is no agreement to arbitrate by the foreign state, and (2) Belize is not a party to the Convention.

1.    FSIA is the Sole Basis for Obtaining Subject-Matter Jurisdiction Over Claims Against a Foreign State.

The FSIA "provides the sole basis for obtaining jurisdiction over an action against a foreign state in federal court." *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993).

The exceptions to foreign sovereign immunity in the FSIA are narrowly construed.  *See e.g., McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012) ("The FSIA established a broad grant of immunity for foreign sovereigns that can only be abrogated by one of the statute's narrowly drawn exceptions."); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010) (the FSIA creates "narrow exceptions").

The FSIA arbitration exception provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

* * *

(6) in which the action is brought, either to enforce *an agreement made by the foreign state* with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a

defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, *or to confirm an award made pursuant to such an agreement to arbitrate*, if

(A) the arbitration takes place or is intended to take place in the United States,

(B) the agreement or *award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards*,

(C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or

(D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1605(a)(6)(A)-(D) (emphasis added).

> 2. <u>The Arbitration Exception Cannot Apply Because the Subject Agreements Cannot be Imputed to GOB for Purposes of the FSIA Determination.</u>

The arbitration exception cannot apply to GOB because it requires the existence of an agreement to arbitrate made "*by the foreign state*" and an award rendered pursuant to such an agreement, but neither requirement is satisfied in this action. The reason is that the former Prime Minister lacked actual authority to execute the subject agreements, including the one containing the arbitration clause.

FSIA jurisprudence is unequivocal: under the FSIA, the "foreign state" has *not* acted when its agent has exceeded the scope of his actual authority. The seminal case is *Phaneuf v. Rep. of Indonesia*, 106 F.3d 302 (9th Cir. 1997). In *Phaneuf*, holders of promissory notes allegedly issued by an Indonesian instrumentality sued Indonesia, invoking the FSIA commercial activity exception. Indonesia "contend[ed] that there was no commercial activity *of the foreign state*" because the subject foreign government officials "exceeded the scope of their authority in issuing and certifying the validity of the notes." *Id.* at 307 (emphasis in the original). The Ninth Circuit held that "an agent must have acted *with actual authority* in order to invoke the commercial activity exception against a foreign state." *Id.* at 308 (emphasis added). "When an agent acts

beyond the scope of his authority, however, that agent is not doing business which the sovereign has empowered him to do." *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949)). "If the foreign state has not empowered its agent to act, *the agent's unauthorized acts cannot be attributed to the foreign state*; there is no activity by the foreign state." *Id.* (emphasis added). "We are not to imply exceptions. If Congress had intended the commercial activity exception to apply to an agent's acts committed without actual authority it could have so indicated in the language of the exception." *Id.*

Similarly, in *Velasco v. Gov't of Indonesia*, 370 F.3d 392 (4th Cir. 2004), a plaintiff holder of a promissory note issued by an Indonesian ambassador sued the Government of Indonesia and invoked the commercial activity exception in the FSIA. The Fourth Circuit noted that "[u]nder Indonesia law, an Ambassador *does not have the inherent power to execute a loan or other financial instrument* to receive foreign credit on behalf of the Republic of Indonesia. An ambassador must request and receive clearance from an interdepartmental committee established to review foreign financial credits." *Id.* at 396 n. 2 (emphasis added). However, at the time the ambassador issued the note, "he was not authorized to do so." *Id.* at 396. Therefore, the Fourth Circuit concluded that "we concur with the position of the Ninth Circuit [in *Phaneuf*] and hold that the commercial activity exception *may be invoked against a foreign state only when its officials have actual authority*." *Id.* at 400 (emphasis added); *accord, Allfreight Worldwide Cargo, Inc. v. Ethiopian Airlines Ent.*, 307 Fed. Appx. 721, 724 (4th Cir. 2009) (holding that contract signed by government officials could not be basis for applying FSIA exception, because government officials "must have actual authority to bind the sovereign," and the subject government officials "did not obtain contractual approval from the Office of the General Counsel."); *Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006) ("the plaintiffs must

demonstrate that the government agent acted with the actual authority of the state to trigger" an FSIA exception; "the apparent authority of the state is insufficient."); *EduMoz, LLC v. Republic of Mozambique,* 968 F.Supp.2d 1041, 1062-1067 (C.D.Cal. 2013) (holding that the FSIA commercial activity exception did not apply on the basis of a contract signed by a Mozambican government Minister, because the minister "acted outside the scope of his authority and failed to comply with Mozambican law in executing the contract.").

This Court recently followed *Phaneuf* in *TJGEM LLC v. Rep. of Ghana*, -- F. Supp.2d -- , 2013 WL 6857988 (D.D.C. 2013). This Court held that "[s]ince the actions of Defendant Vanderpuije are at the crux of all of the plaintiff's claims, and the plaintiff admits that Defendant Vanderpuije *did not have actual authority to award the contract at issue*, those claims, even if assumed to be true, *cannot be attributed to Ghana or AMA*." *Id.* at **4-7 (emphasis added). In so holding, this Court adopted (as did the various other courts discussed above) the *Phaneuf* holding that "when the foreign state has not empowered its agent to act, the agent's unauthorized act cannot be attributed to the foreign state; there is no activity of the foreign state." *Id.*

The requirement of actual authority should be applied consistently to both the commercial activity and arbitration exceptions in the FSIA. Like the commercial activity exception, which requires commercial activity "of the foreign state," the arbitration exception requires an agreement to arbitrate made "*by the foreign state*" and an award rendered pursuant to such an agreement. The phrase "by the foreign state" must be interpreted *consistently* throughout the FSIA. Courts begin their analysis with "the text of the statute." *Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007). "[I]dentical words used in different parts of the same act are intended to have the same meaning." *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1990); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 222 (2008) (courts "ensure that the statutory scheme is

coherent and consistent."). The FSIA also must be applied consistently, because it "is a comprehensive statute containing a set of legal standards governing claims of immunity in every civil action against a foreign state . . .." *Rep. of Austria v. Altmann*, 541 U.S. 677, 691 (2004).

In this case, the former Prime Minister lacked actual authority to execute the subject agreements, including the Settlement Deed that contained the arbitration clause. The subject arbitration award relates to the Guarantee, signed on December 9, 2004, by then-Prime Minister Said Musa in favor of the Bank, which purported to guarantee the payment to the Bank of all debts owed by UHS to the Bank. Gandhi Decl. at ¶ 2. The Guarantee was the substratum of the Settlement Deed and Loan Note of March 23, 2007, between the Bank and GOB, which, in turn, formed the basis of the award. The Settlement Deed and Loan Note were purportedly entered into in order for GOB's liability under the Guarantee to be defined and settled. *Id.* at ¶ 3.

First, as explained in paragraph 4 of the Gandhi Declaration, the former Prime Minister lacked actual authority to execute the Guarantee. The reason is that the Guarantee was a charge on the Belizean Consolidated Revenue Fund and, as such, required the approval of the National Assembly before it could be lawfully given, pursuant to Section 114 of the Belizean Constitution (*see* Exhibit 1 to Gandhi Decl.). Specifically, the relevant portions of Section 114 provide:

> (l) All revenues or other moneys raised or received by Belize (not being revenues or other moneys payable under this Constitution or any other law into some other public fund established for a specific purpose) *shall be paid into and form one Consolidated Revenue Fund.*

> (2) *No moneys shall be withdrawn from the Consolidated Revenue Fund except to meet expenditure that is charged upon the Fund by this Constitution or any other law enacted by the National Assembly* or where the issue of those moneys has been authorised by an appropriation law or by a law made in pursuance of section 116 of this Constitution.

> (3) *No moneys shall be withdrawn from any public fund other than the Consolidated Revenue Fund unless* the issue of those moneys has been *authorised*

> *by a law enacted by the National Assembly.*

(Emphasis added).  The National Assembly never enacted any law authorizing the Guarantee.
As such, the Guarantee was null and void, *ab initio.*  Gandhi Decl. at ¶ 4.

Second, the former Prime Minister also lacked actual authority to execute the Settlement
Deed and the Loan Note, for the same reason.  The Settlement Deed and Loan Note were
purportedly entered into in order for GOB's liability under the Guarantee to be defined and
settled.  In the Settlement Deed, GOB purportedly promises to make a defined payment; the
Loan Note contains the purported promise to make such payment.  As such, the Settlement Deed
and Loan Note were a charge on the Consolidated Revenue Fund and therefore required the
approval of the National Assembly before they could be lawfully given, pursuant to the
requirements of Section 114 of the Belizean Constitution.  The National Assembly never enacted
any law authorizing the Settlement Deed and Loan Note.  As such, the Settlement Deed and
Loan Note also are null and void, *ab initio.*  Gandhi Decl. at ¶ 5.

The record clearly establishes that the former Prime Minister lacked actual authority to
execute each of the subject agreements.  Accordingly, this case is factually similar to *Phaneuf*
and *Velasco*.  In *Phaneuf*, the government officials who signed the subject promissory notes
failed to comply with local law and therefore lacked actual authority to execute the notes; the
Phaneuf court held that "these government officers exceeded the scope of their authority in
issuing and certifying the validity of the notes." 106 F.3d at 304, 307.  In *Velasco*, the court
found that "[u]nder Indonesia law, an Ambassador *[did] not have the inherent power to execute
a loan or other financial instrument* . . . on behalf of the Republic of Indonesia." 370 F.3d at 396
n. 2.  In this case, similarly, the former Prime Minister lacked actual authority to execute the
Guarantee and the Settlement Deed and Loan Note without prior approval of the National

Assembly, yet, like the officials in *Phaneuf* and *Velasco,* he failed to obtain the required authorization.

As a result, the subject agreements, including the Settlement Deed containing the arbitration clause upon which the award is based, cannot be imputed to GOB for purposes of the FSIA determination.  There is no "agreement to arbitration" by GOB.  Therefore, the arbitration exception does not apply.  In short, if the foreign state has not empowered its agent to act, *the agent's unauthorized acts cannot be attributed to the foreign state . . .."  Phaneuf*, 106 F.3d at 308 (emphasis added).

3.     <u>The Privy Council Did Not Hold that the Former Prime Minister<br>Complied with Section 114 of the Belizean Constitution.</u>

In its Petition at ¶ 39, the Bank makes the following statement:  "In a judgment dated October 20, 2011, the Privy Council held that the Loan Note was lawful."

However, the Bank does not cite or attach the specific decision, which is *The Belize Bank Limited v. The Association of Concerned Belizeans and Others*, Privy Council Appeal No. 0096 of 2010, [2011] UKPC 35, *available at* 2011 WL 4966310 (20 Oct. 2011) ("*ACB* decision") (attached to the Gandhi Decl. as Exhibit 2).  One must review the decision in detail to understand what it held, because the holding was not as broad as the Bank suggests.  Gandhi Decl. at ¶ 6.

Specifically, the Privy Council held only that the Loan Note was not a "loan" and, thus, did not require National Assembly approval under Section 7(2) of the Finance and Audit (Reform) Act, 2005 (No. 12 of 2005) (the "Act") (which requires such approval prior to the government entering into a loan).  *ACB* decision at ¶¶ 1-2, 27-30, 42 and 45.  Instead, the Privy Council considered the Loan Note to be a "promissory note."  *Id.* at ¶ 27.  The purpose of the Settlement Deed and Loan Note was "to settle the position as between the Bank and the Government under the 2004 Guarantee . . .."  *Id.* at ¶ 28.  Therefore, the Privy Council held that the Settlement

13

Deed and Loan Note did not violate *Section 7(2) of the Act*.  Gandhi Decl. at ¶ 7.

However, the Privy Council never reached the issues involved here.  Specifically, the Privy

Council did not address whether the Guarantee, Settlement Deed and Loan Note violated Section

114 of the Belizean Constitution. Gandhi Decl. at ¶ 8 and *ACB* decision, *generally*.

Tellingly, as explained in paragraph 9 of the Gandhi Decl., the Bank ignores that the Privy

Council did hold that, if the Guarantee was unlawful, the Settlement Deed or Loan Note also

would be invalid and unenforceable:

> "Although the Board [Privy Council] does not wish to throw any doubt upon the
> autonomy of a promissory note as a general principle, *it does not found its
> judgment on the proposition that, even if there was a loan which was invalid
> under the Act, the Loan Note would in any event be enforceable as a Promissory
> note – the illegality under its governing law of consideration given for a
> promissory note (here in fact also subject to the same law) precludes enforcement
> of the promissory note*:  Chalmers and Guest on Bills of Exchange and Cheques
> (17th Ed.) (2009) para. 12-018 and Byles on Bills of Exchange and Cheques (28th
> ed.) (2007) (para 19-023)."

(*ACB* decision at ¶ 45) (emphasis added).  Indeed, given that the Guarantee is invalid, there was

also a lack of consideration and the subsequent Settlement Deed and Loan Note are rendered

unenforceable, according to the Privy Council.  Gandhi Decl. at ¶ 9.  A such, there was no

enforceable agreement to arbitrate.  For this additional reason, the Petition should be dismissed

because the arbitration award is based upon invalid and unenforceable agreements.

    4.      The FAA's Severability Rule is Inapplicable to the FSIA Determination.

Jurisprudence regarding the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), sets

forth a "severability" rule, under which courts will review *de novo* the validity of the arbitration

agreement, but not the underlying agreement.[2]  GOB anticipates that the Bank will cite *Belize*

---

[2]    The FAA "creates a body of federal substantive law establishing and regulating the duty to
honor an agreement to arbitrate."  *Moses H. Cone Mem. Hosp. v. Mercury Const. Co.*, 460 U.S.
1, 26 (1983).  "Severability" is a substantive law concept of the FAA.  *See Buckeye Check*

*Social Development Ltd. v. Government of Belize*, -- F.Supp.2d -- , 2013 WL 6502416 (D. D.C. 2013) ("*BSDL*"), wherein the court refused to review the validity of the underlying agreement based on the FAA's severability rule.

However, the *BSDL* decision is on appeal and is being reviewed on a *de novo* basis. *See In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 79 (2d Cir. 2008). The BSDL decision also generally lacks precedential value. "Binding precedent for all [courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." *In Re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C.Cir.1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). District courts cite this decision for the proposition that they are not bound by other decisions within the DC District Court. *See, e.g., Lawton v. Republic of Iraq*, 581 F. Supp. 2d 43, 46-47 (D. D.C. 2008).

Nonetheless, GOB wishes to address the issue head-on. The "severability" rule is inapplicable to the FSIA determination because it is rooted in the FAA, *not the FSIA*. The arbitration exception requires the existence of an "an agreement *made by the foreign state … to submit to arbitration*" and it *has no 'severability' rule*. *See* 28 U.S.C. § 1605(a)(6) (emphasis added). The Supreme Court has held that the FSIA analysis must be made based solely on the principles *in the FSIA* (not on principles borrowed from other acts). *See Rep. of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2255-56 (2014); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983). Therefore, this Court is required to determine whether the former Prime Minister had *actual authority*. If he did not, then the subject agreements (including the Settlement Deed and its arbitration clause) *cannot be imputed to GOB for purposes of the FSIA*

---

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is *severable* from the remainder of the contract.").

*arbitration exception*.  In other words, if unauthorized, there was no agreement at all, including no agreement to arbitrate, "*made by the foreign state*."

Indeed, with all respect to Judge Leon, *BSDL* improperly imported principles of severability rooted in the FAA into the FSIA.  This is contrary to the Supreme Court's emphatic directive that it is for the *courts* to determine whether foreign sovereign immunity and its exceptions apply based exclusively on the "*must apply the detailed federal law standards set forth in the Act [FSIA]*."  *Verlinden*, 461 U.S. at 493-94 (emphasis added); *NML Capital*, 134 S. Ct. at 2255-2256.

There is no legal basis for importing the FAA's severability rule into the *distinct* question whether it is the "foreign state" that made the arbitration agreement for purposes of the FSIA analysis.  The Supreme Court has clearly instructed that "any sort of immunity defense made by a foreign sovereign in an American court *must stand on the Act's text.  Or it must fall*."  *NML Capital*, 134 S. Ct. at 2256 (emphasis added).

Indeed, before a court may reach FAA rules, the subject matter jurisdictional inquiry must be satisfied under the FSIA.  *See Soudavar v. Islamic Rep. of Iran*, 67 Fed. Appx. 618, 619-20 (D.C. Cir. 2003) ("the district court properly held that in a suit involving a foreign state, a plaintiff must satisfy subject matter jurisdiction under the FSIA *before* the court can reach claims under the Alien Tort Claims Act.") (emphasis added) (unpublished).  The court is tasked with undertaking a *de novo* analysis of the facts (here, the issue of lack of actual authority) necessary for the FSIA determination.  *See Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 Fed. Appx. 822, 824 (3d Cir. 2011) (affirming district court's "*de novo . . .* determin[ation] that the order confirming the arbitration award was void because the District Court lacked jurisdiction under the Foreign Sovereign Immunities Act.") (unpublished).

In other words, "*there is only one way* for a court to obtain jurisdiction over a foreign state and it is not particularly generous one—the FSIA." *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005) (emphasis added).  The FAA is irrelevant to the FSIA analysis.[3]

In any event, even if the FAA severability rule could apply to the FSIA determination, "[t]he severability doctrine has been held *not* to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden v. Checkpoint Check Cashing,* 290 F.3d 631, 637 (4th Cir. 2002) (emphasis added).  This holding was extended to the New York Convention in *China Minmetals Import and Export Co., Ltd. v. Chi Mei Corp.,* 334 F.3d 274, 289 (3d Cir. 2003).  There, the Third Circuit held that "a party that opposes enforcement of a foreign arbitration award under the Convention on the grounds that the alleged agreement containing the arbitration clause on which the arbitral panel rested its decision was void *ab initio* is entitled to present evidence of such invalidity to the district court, which must make an independent determination of the agreement's validity and therefore of the arbitrability of the dispute, at least in the absence of a waiver precluding the defense." *Id.* at 289.  This is *precisely* what GOB is arguing: that the subject underlying agreement *containing the arbitration clause* is void *ab initio*.  It is irrelevant that GOB's challenge to the arbitration clause in particular arises in the same context as GOB's challenge to the agreement as a whole.  GOB has challenged the agreement as void *ab initio* and is entitled to a *de novo* determination by the District Court.  Therefore, the severability doctrine is no bar to GOB's claim that the underlying agreements are void *ab initio*.  *Cf. Phaneuf*, 106 F.3d at 306-

---

[3]   This conclusion is also supported by the established view that "[t]he FAA does not independently confer subject-matter jurisdiction." *Scandinavian Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 71 (2d Cir. 2012).  If the FAA is not meant to confer subject matter jurisdiction, it is improper for a court to use the FAA's severability rule to establish subject matter jurisdiction under the FSIA, instead of conducting its own review of the validity of the agreements including the arbitration clause as required by FSIA jurisprudence.

307 (holding that, where defendant sovereign contends that a government official acted without actual authority, the court must make factual findings regarding the "scope of his authority.").

In sum, under FSIA law, because the former Prime Minister lacked *actual authority* to execute the subject agreements, including the Settlement Deed containing the arbitration clause, the arbitration agreement is not considered to be an act "*by the foreign state*" and cannot be *imputed* to the foreign state to apply an FSIA exception.  There was no agreement "by the foreign state" *at all*, and the arbitration exception cannot apply to the resulting award.

5.   The Arbitration Exception Also Cannot Apply Because the Convention Does Not Apply to GOB.

The arbitration exception also requires that the "award is or may be governed by a treaty … calling for the recognition and enforcement of arbitral awards."  Thus, courts *must* determine whether the Convention applies in the particular case.  The Convention cannot apply to GOB because Belize has not ratified it.  As such, the FSIA arbitration exception does not apply.

It is a cardinal principle of international law that two sovereigns can agree to bind each other, but cannot bind *another* sovereign:  "America and Spain may bind themselves, but they cannot bind foreign nations."  *Chacon v. Eighty-Nine Bales of Cochineal*, 1 Brock 478, 5 F.Cas. 390, 393 (Cir. Ct. D. Va. 1821), *aff'd Santissima Trinidad & St. An De*, 20 U.S. 283 (1822).  "Sovereigns are equal," as Chief Justice John Marshall said in *Schooner Exchange v. M'Faddon*, 11 U.S. (7 Cranch) 116, 134 (1812).

For example, our courts have *consistently* held that the U.S. is *not* bound by a treaty that it has not ratified.  The D.C. Circuit has held that "a treaty . . . binds only those countries that have ratified it."  *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 35-36 (D.C. Cir. 2011), *vacated on other grounds*, 527 Fed. Appx. 7 (D.C. Cir. 2013); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1489 (D.C. Cir. 1991); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S.*

*Dep't. of Transp.*, 724 F.3d 230, 232 (D.D.C. 2013).  The Supreme Court also has held that the

U.S. is bound on by ratified treaties.  *Haver v. Yaker*, 75 U.S. (9 Wall.) 32, 35 (1869).  Other

Circuits concur.  *See, e.g., Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 256 (2d Cir. 2003)

("State only becomes bound by—that is, becomes a party to—a treaty when it ratifies the

treaty."); *Flores-Nova v. Attorney Gen.*, 652 F.3d 488, 494 n.6 (3d Cir. 2011) ("Unratified

treaties are not binding … and do not have the force of law.").

  The United Nations does not recognize Belize as a party to the Convention because Belize

has not ratified it.  *See* U.N. website,  http://www.uncitral.org/uncitral/en/uncitral_texts/

arbitration/NYConvention_status.html.  Thus, Belize is not bound by the Convention because it

has not *consented* to jurisdiction in U.S. courts vis-à-vis that treaty.  "It is elementary that the

United States, as sovereign, is immune from suit save as it *consents to be sued*, and the terms of

its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Tobar v.*

*U.S.*, 639 F.3d 1191, 1194 (9th Cir. 2011) (emphasis added).  The same rule must be applied to a

*friendly foreign sovereign*, like Belize.  "In the field of international law, where no single

sovereign reigns supreme, the Golden Rule takes on added poignancy."  *De Sanchez v. Banco*

*Central de Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985).[4]

  Indeed, the language of the Convention supports the conclusion that, although the United

States and U.K. (where the subject arbitration took place) can bind *private* litigants that arbitrate

in their jurisdictions regardless of their citizenship or domicile, they cannot bind another foreign

sovereign like Belize, unless and until it ratifies the Convention.

  The Convention is primarily focused upon *private litigants* as parties, not upon foreign

---

[4] Equal treatment of the U.S. government and foreign states also is supported by the FSIA.
For instance, "[a]s in suits against the U.S. Government, jury trials are excluded" against foreign
states under the FSIA.  H.R. Rep. No. 94-1487 at *13.

states.  In *Creighton Ltd v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999), the

D.C. Circuit held that, under the Convention, "the critical element is the place of the award . . .

regardless of the *citizenship* or *domicile* of the parties to the arbitration."  This holding is also

repeated by *Belize Social Development Limited. v. Government of Belize*, 668 F.3d 724, 731 note

3 (D.C. Cir. 2012), *cert. denied,* -- U.S. -- , 133 S.Ct. 274 (2012), and by the Bank in its

memorandum in support of its Petition.  However, the *Creighton* language makes clear that this

holding was directed towards *private litigants*.  Obviously, a "foreign state" has no "citizenship"

or "domicile"; rather, a foreign state *is* the domicile and the place of citizenship.

The Convention further illustrates this distinction between ratifying "States" and the

private parties to arbitration agreements that the Convention was primarily intended to cover.

Article I(1) of the Convention specifically provides that *"[t]his Convention shall apply* to the

recognition and enforcement of arbitral awards made in the territory of a State other than the

State where the recognition and enforcement of such awards are sought, *and arising out of*

differences *between persons*, whether physical or legal." (Emphasis added).  However, GOB is a

foreign state, and not a "person," according to the D.C. Circuit's holding in *Price v. Socialist*

*People's Libyan Arab Jamahiriya*, 294 F.3d 82, 97 (D.C. Cir. 2002).

Therefore, because GOB is not a "person," the Convention cannot be applied to it under

Article I(1).  Article I(1) is the same provision cited by *Creighton* in making its holding cited

above.  *See* 181 F.3d at 121.  *BSDL* merely repeated the *Creighton* holding.  *See* 668 F.3d at 731

n. 3.  Because Article I(1) only applies to persons, and GOB is not a person under *Price*, then the

Convention is simply inapplicable to GOB, and the FSIA arbitration exception's requirement --

that an arbitration treaty apply to the subject award --  simply cannot be satisfied.

Indeed, to determine when a multilateral treaty goes into force as to a sovereign state, one

must review "the terms of the treaty." *Avero Belgium Ins. v. Am. Airlines, Inc.*, 423 F.3d 73, 81-82 n.10 (2d Cir. 2005). Article XII(2) of the Convention requires ratification before it "*enters into force*" as to a particular foreign sovereign; thus, regardless of *what the substantive provisions of the Convention state* (*i.e.*, that it applies when a person arbitrates in a signatory state), those substantive provisions cannot "enter into force" against a sovereign state itself (as opposed to a private party) until after that sovereign state has ratified the Convention under Article XII(2). *Creighton's* holding that "the critical element is the place of the award," 181 F.3d at 121, applied Article I(1) of the Convention but that provision applies only to persons not foreign states and, in any event, cannot "enter into force" against a sovereign until after it has ratified the Convention under the more specific provision of Article XII(2).[5]

In sum, the arbitration exception requires that the "award is or may be governed by a treaty … calling for the recognition and enforcement of arbitral awards." However, the Convention cannot apply to the subject arbitration award, because Belize has not ratified the Convention and is not a party to it. For this reason, too, the FSIA arbitration exception does not apply.

### 6.    GOB Did Not Waive Its Foreign Sovereign Immunity.

The FSIA also contains a waiver exception, which provides that a foreign state is not entitled to foreign sovereign immunity if "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1).

In its memorandum in support of its Petition, the Bank cites Clause 9.5 of the Settlement Deed which purports to waive GOB's "immunity." However, there is no waiver of foreign

---

[5]    *Creighton* is further distinguishable because "[t]hat the New York Convention applies to the arbitral award Creighton obtained against Qatar in France, and that the award is therefore enforceable in United States courts, [was] *undisputed*." 181 F.3d at 121 (emphasis added). *Creighton* also did not address Article XII(2) of the Convention, which unequivocally requires ratification before the Convention "enters into force" as to "each" ratifying "State" (as opposed to citizens of such States).

sovereign immunity by GOB because, as discussed above, the former Prime Minister lacked

actual authority to execute the Settlement Deed, which renders the entire Settlement Deed

(including its Clause 9.5) void *ab initio*.

The FSIA waiver exception must also be construed "narrowly." *Abelesz v. Magyar Nemzet Bank,* 692 F.3d 661, 670 (7th Cir. 2012). It would be a broad construction to hold that the waiver exception applies based on an unauthorized contract signed by a government official. There is no such language in the waiver exception allowing unauthorized acts to be a basis for applying the exception. *C.f., Phaneuf*, 106 F.3d at 308 ("We are not to imply exceptions. If Congress had intended the commercial activity exception to apply to an agent's acts committed without actual authority it could have so indicated in the language of the exception."). Instead, the *Phaneuf* rule also should apply to the waiver exception.

In sum, as has been stated by the D.C. Circuit in the context of the U.S. government, "we are mindful of the black letter law that the United States as a sovereign may not be sued unless it consents." *Flexfab, L.L.C. v. United States,* 424 F.3d 1254, 1264 (D.C.Cir. 2005) (citing United States v. Lee, 106 U.S. 196, 207 (1882)). "But the government does not lightly consent to suit. Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept. We thus are careful not to open the courthouse doors to those falling victim to the statements of *unauthorized* government agents, lest we broaden improperly the government's waiver of immunity from suit in these cases." *Id*. (emphasis in the original).

Accordingly, as a matter of law, there also can be no waiver of immunity by the GOB, because the Prime Minster lacked authority to execute the subject agreement containing the purported waiver clause.

B.     <u>THE PETITION SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.</u>

The Petition should also be dismissed on FNC grounds. Belize is an adequate alternative forum, and the private and public factors also favor the Belizean forum.

The FNC doctrine applies to confirmation actions under the Convention, because such actions "are subject to the rules of procedure that are applied in the courts where enforcement is sought," and the FNC doctrine is "procedural." *See In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 495-97 (2d Cir. 2002)

Under the FNC doctrine, courts must decide whether an adequate alternative forum is available and, if so, whether a balancing of private and public interest factors strongly favors dismissal. *Agudas Chasidei Chabad of U.S. v. Russian Fed.*, 528 F.3d 934, 950 (D.C. Cir. 2008).

    1.     <u>Belize is an Adequate Alternative Forum.</u>

In *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), the D.C. Circuit held that there can be no adequate alternative forum where a plaintiff seeks to attach assets in the U.S. *Id.* at 303. In *BSDL*, *supra*, the court followed *TMR Energy* to find that Belize was not an adequate alternative forum simply because the plaintiff was seeking to enforce an arbitration award against assets in the U.S. 2013 WL 6502416 at *5.

However, *TMR Energy* is not controlling law because it conflicts with more recent, Supreme Court precedent. In *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007), the Supreme Court held that "[a] federal court *has discretion* to dismiss a case on the ground of *forum non conveniens* '*when an alternative forum has jurisdiction to hear [the] case* . . . .'" 549 U.S. at 429 (emphasis added). Therefore, the only limitation is that the alternative forum have "jurisdiction to hear the case." *Id.* None of the decisions cited by *Sinochem* limits a court's discretion as *TMR Energy* did. *See American Dredging Co. v. Miller*,

510 U.S. 443, 447-48 (1994); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947).

Thus, *TMR Energy* creates an impermissible litmus test that is at odds with *Sinochem*. A single factor (pursuit of assets here) governs the outcome. *See also Figueiredo Ferraz E Engenharia de Projecto Ltda. v. Rep. of Peru*, 665 F.3d 384, 391 (2d Cir. 2011). This result is contrary to Supreme Court holdings, which instruct that "[d]ismissal for *forum non conveniens* [should] reflect[] a court's assessment of a 'range of considerations . . . .'" *Sinochem*, 549 U.S. at 429; *see also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct.*, --U.S. -- , 134 S.Ct. 568, 580 (2013) ( the FNC doctrine "entail[s a] … balancing-of-interests …"). Because "*forum non conveniens* has continuing application only in cases where the alternative forum is abroad," *Sinochem*, 549 U.S. at 429, *TMR Energy eviscerates* the FNC doctrine, since a foreign court could not reach assets in the U.S. In fact, *TMR Energy* does not even require the existence of assets in the U.S. The bare assumption that a defendant "may own" property in the future renders an alternative forum inadequate. 411 F.3d at 303-4. Thus, controlling authority is *Sinochem,* not *TMR Energy.*

Here, Belize is an adequate alternative forum because GOB is subject to jurisdiction in Belize. In fact, the Bank has already initiated a prior pending confirmation action against GOB in Belize arising from the instant arbitration award, which confirms that GOB is subject to jurisdiction in Belize and that the Bank can pursue the same remedy in Belize. Waight Decl. at ¶ 10.

> 2.    The Private Interest Factors Favor the Belizean Forum.

The private interest factors favor Belize because the Bank and GOB (the parties to the arbitration award) are Belizean, the subject agreements were executed in Belize and are subject to Belizean law, the witnesses and documents are located in Belize, this dispute has no

connection to the United States, and the Bank's choice of forum is afforded little weight because it is not a U.S. entity.  Therefore, the private factors favor FNC dismissal.  *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947).

       3.      The Public Interest Factors Also Favor the Belizean Forum.

Similarly, the public interest factors favor Belize.  As in *Figueiredo*, 665 F.3d at 391-94 , the U.S.' "general policy" in favor of arbitration must "give way" to GOB's strong public interest in having this purely Belizean dispute adjudicated in Belize.

As discussed above, the constitutional requirements that render the acts of the former Prime Minster unauthorized and the subject agreements void *ab initio* support the Belizean public policy of Separation of Powers, which is a cornerstone of their constitution.  Section 114 of the Constitution is an essential check on the acts of the Executive Branch, and reserves to the Legislative Branch sole authority over the public purse.  Thus, Belize has a strong public interest in this dispute, which involves critical Belizean constitutional issues of the former Prime Minister's authority.  Waight Decl. at ¶ 9.

GOB is seeking to eradicate past corruption, including prior secret governmental agreements like those at issue.  The U.S. supports such initiatives, and our courts should not get embroiled in such sensitive foreign issues. "There is a local interest in having localized controversies decided at home."  *Gilbert*, 330 U.S. at 509; *see also MBI Group, Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 576 (D.C. Cir. 2010).  This dispute requires adjudication of the validity of the former Prime Minister's actions.  Deferring to Belizean courts is appropriate because this U.S. court would have to "untangle" foreign law.  *MBI Group*, 616 F.3d at 576.  Further, if this Court affirmed, it would give effect to an arbitration award based on an illegal agreement.  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (a confirmed arbitration award is a "judgment of the court.").

In sum, there are many complex issues that render a confirmation action inappropriate for resolution of this dispute.  *See Productos Mercantiles etc. v. Faberge USA, Inc.*, 23 F.3d 41, 46-47 (2d Cir. 1994).   This action should be dismissed on FNC grounds.

    C.    <u>THE PETITION MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.</u>

The Petition should also be dismissed for lack of personal jurisdiction.  The minimum contacts requirements of Due Process cannot be satisfied as to GOB.  GOB has done nothing to avail itself of the protections of U.S. law and the authority of this Court.

GOB acknowledges that, in *Weltover*, 504 U.S. at 619-20, the Supreme Court questioned whether foreign states are "persons" under the Due Process clause (since States of the Union are not) and are entitled to the protections of *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Thereafter, this Circuit held in *Price*, 294 F.3d at 96-100, that foreign states are not "persons."  "[W]e are unwilling to interpret the Due Process Clause as conferring rights on foreign nations that States of the Union do not possess."  *Id.* at 99.  "[A]bsent some compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause."  *Id.* at 96.  *Compelling reasons exist to safeguard sovereigns against the unfettered exercise of personal jurisdiction.*

Recently, in *Daimler AG v. Bauman*, -- U.S. -- , 134 S.Ct. 746 (2014), the Court limited personal jurisdiction over foreign private corporations:

> "The Ninth Circuit *paid little heed to the risks to international comity its expansive view of general jurisdiction posed.  Other nations do not share the uninhibited approach* to personal jurisdiction advanced by the Court of Appeals in this case. . . . The Solicitor General informs us . . . that *'foreign governments' objections to some domestic courts' expansive views of general jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments.' Considerations of international rapport thus reinforce our determination ...*"

134 S.Ct. at 763 (emphasis added).

These considerations militate against holding that a foreign state should not benefit from *Int'l Shoe*. *A contrary result would make personal jurisdiction over foreign states broader than personal jurisdiction over foreign private corporations. GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012). ("Supreme Court has reaffirmed … that foreign corporations are entitled to due process protection, despite the fact they have no meaningful connection to the United States."). Thus, even if the Due Process clause does not *technically* apply to foreign states because they are not "persons," the principles in *Int'l Shoe* can and should be *extended* to foreign states based on international comity.

Further, "[a]s a general rule, neither *statute* nor judicial decree *may bind strangers to the State.*" *J. McIntyre Machinery, Ltd. v. Nicastro*, -- U.S. -- , 131 S.Ct. 2780, 2786-87 (2011) (emphasis added). This rule is independent of Due Process and goes "to the power of a sovereign to prescribe rules of conduct for those within its sphere." *Id.* Thus, the principles in *Int'l Shoe* should be extended to foreign states despite of a lack of constitutional connection. Foreign sovereign immunity "is a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution." *NML Capital*, 2014 WL 2675854 at *4.

In *Price*, in which the D.C. Circuit held that foreign states were *not* persons entitled to due process protection, the holding was justified on the basis that "the federal judiciary has relied on principles of comity and international law to protect foreign governments in the American legal system." 294 F.3d at 97. Similarly, the Fifth Circuit has held that "in accordance with the decision of every circuit to have considered this issue, that dismissal of a petition under the New York Convention for lack of personal jurisdiction is appropriate as a matter of constitutional due process." *First Inv. Corp. of Marshall Islands v. Fuji Mawei Shipbuilding, Ltd.,* 703 F.3d 742, 748 (5th Cir. 2012). This Court should give due weight to these principles, extend Due Process

protections to foreign states themselves on the basis of international comity (to eliminate the anomaly that foreign private companies have greater protection against being brought into U.S. courts than foreign states), and dismiss this confirmation action, given that GOB has been brought before this Court on a matter with absolutely no nexus to the United States.

Another reason why foreign states should not be treated like States is because "States entered the Union with their sovereign immunity intact" under the Eleventh Amendment. *See Virginia Office for Protection and Advocacy v. Stewart*, -- U.S. -- , 131 S.Ct. 1632, 1637 (2011). *Int'l Shoe* has been used to create a similar "consent-based" gatekeeper to the exercise of personal jurisdiction over foreign states in confirmation actions. *See Creighton*, 181 F.3d at 125-28; *First Investment Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749-51 (5th Cir. 2013). This is particularly appropriate if the FSIA arbitration exception applies regardless of whether a foreign state has ratified the Convention, because it would mean jurisdiction is not being asserted on a "consent" basis against the foreign sovereign in violation of accepted norms of international law.

The concept of requiring "contacts" with the forum also is part of the so-called "restrictive theory" of foreign sovereign immunity, codified in the FSIA. The FSIA was enacted in response to U.S. experience that its "pleas of immunity were routinely denied [by foreign courts] in tort and contract cases where the necessary contacts with the forum were present." H.R. REP. NO. 94-1487 at *9 (1976). The FSIA was intended to replace the first prong (long-arm statute) of the personal jurisdictional analysis, but not the second prong (minimum contacts). *Id.* at *13. Congress intended to incorporate Due Process protections in the FSIA: "Significantly, each of the immunity provisions in the bill, sections 1605-1607, requires some connection between the lawsuit and the United States, or an express or implied waiver by the foreign state of

its immunity from jurisdiction." *Id.* "The requirements of minimum jurisdictional contacts . . . are embodied in the" FSIA. *Id.* (citing *Int'l Shoe*). Therefore, it would be consistent with the FSIA to extend *Int'l Shoe* to foreign states on comity grounds.

Due process requires that for a case to go forward the defendant must "have [had] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316. The defendant's contacts with the forum must be of a quality that it "should reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

For example, in *Creighton*, the D.C. Circuit held that the Government of Qatar lacked minimum contacts with United States and, thus, the exercise of personal jurisdiction over Qatar in action brought by foreign contractor that was hired by Qatar to build hospital, which sought to enforce an arbitration award entered by French tribunal, did not comport with due process, notwithstanding fact that contractor was based in United States and that Qatar had contacted contractor there. 181 F.3d at 125-128. The D.C. Circuit specifically held that:

> "Creighton, however, has not cited, nor are we aware of, any authority for the proposition that an agreement to arbitrate in one forum constitutes a waiver of the right to challenge personal jurisdiction in another. On the contrary, the decisions of which we are aware have held that an implicit waiver of personal jurisdiction in a defendant's agreement to litigate or to arbitrate in a particular jurisdiction is applicable only within that jurisdiction."

*Id.* at 126.

> "It seems to us likewise implausible that Qatar, by agreeing to arbitrate in France, a signatory to a treaty containing a similar reciprocal 'recognition and enforcement' clause, should be deemed thereby to have waived its right to challenge personal jurisdiction in

the United States.  For these reasons we hold that Qatar did not waive its objection to personal jurisdiction in the United States by agreeing to arbitrate in France."

*Id.* at 127.

Here, the minimum contacts requirements cannot be satisfied as to GOB.  This arbitration award and the underlying agreements have nothing to do with the United States.  The agreements were entered into in Belize, are subject to Belizean law, and were purportedly entered into between GOB and the Bank, non-U.S. entities.  The agreements do not call for any performance in the United States.  Belize has not ratified the Convention; therefore, it cannot be said that GOB has consented to jurisdiction in the United States (which would be the case had it ratified the Convention).   GOB has done nothing to avail itself of the protections of U.S. law and the authority of this Court.  Because GOB lacks the requisite minimum contacts with this jurisdiction, this action must also be dismissed for lack of personal jurisdiction.

D.      THE PETITION SHOULD BE DISMISSED ON INTERNATIONAL COMITY GROUNDS.

Finally, abstention is warranted and the Petition should be dismissed based on international comity grounds.

On July 26, 2013, in *BCB Holdings Ltd. et al. v. Attorney General of Belize*, the CCJ ruled that another agreement signed by the same former Belizean Prime Minister that sought to alter the tax regime applicable to private companies was illegal and refused to enforce an LCIA award.  *See* Gandhi Decl. at ¶ 10 and Exhibit 3.

The CCJ noted that the LCIA had awarded damages based on an agreement ("Deed") that provided that two Belizean companies (BCB Holdings and BCB Bank) should enjoy "a tax regime specially crafted for them and at variance with the tax laws of Belize."  *Id.,* Exhibit 3 at ¶ 1.  The CCJ held that it would be against public policy to recognize the LCIA award.  *Id.* at ¶ 3.

Like the instant agreements, the Deed was executed by former Prime Minister Musa and was also deemed confidential to keep it out of the public eye.  *Id.* at ¶ 5.

The CCJ disagreed with the view that "because the [LCIA] had considered and rejected the idea that the Deed was illegal, we are necessarily precluded from considering afresh that issue . . . any such estoppel must yield to the public policy against giving effect to transactions obviously offensive to the court."  *Id.* at ¶ 32.

The CCJ reviewed the Deed, and held that "[t]he promises made by the Minister were designed to effect, indeed to alter the Companies' obligations under existing law."  *Id.* at ¶¶ 32-36.  The CCJ continued:

> Section 68 of the Constitution empowers the National Assembly to make laws.  The power to impose, alter, regulate and remit taxes and duties is a power constitutionally vested in the legislature.  Only Parliament, or a body specifically delegated by Parliament, may lawfully grant exceptions to the obligations to obey the country's revenue laws.

*Id.* at ¶ 43.

> In our judgment, implementation of the provisions of the Deed, without legislative approval and without the intention on the part of its makers to seek such approval, is indeed repugnant to the established legal order of Belize.

*Id.* at ¶ 53.

> The rights and freedoms of the citizenry and democracy itself would be imperiled if courts permitted the Executive to assume unto itself essential law-making functions in the absence of constitutional or legislative authority to do so.  It would be utterly disastrous if the Executive could do so, selectively, via confidential documents.  In young States especially, keen observance by the courts of the separation of powers principle remains vital to maintaining the checks and balances that guarantee the rule of law and democratic governance.

*Id.* at ¶ 42.

The CCJ concluded that "it is clear that the Minister had no power to guarantee fulfilment of the promises he gave." *Id.* at ¶ 58. The CCJ refused to recognize the LCIA award as contrary to public policy. *Id.* at ¶¶ 54-61. Noted the CCJ:

> The grounds for not enforcing the Award are compelling. The sovereignty of Parliament subject only to the supremacy of the Constitution is a core constitutional value. So too is the principle of Separation of Powers … To disregard these values is to attack the foundations upon which the rule of law and democracy are constructed throughout the Caribbean.

*Id.* at ¶ 59.

Therefore, if this Court were to confirm the subject arbitration award (which is also based on an agreement executed by former Prime Minister Musa without authority and without Legislative Branch approval), there would be an *actual conflict* with the CCJ ruling, the law of the land in Belize, requiring abstention based on international comity grounds. *See In re Maxwell Comm. Corp.*, 93 F.3d 1036, 1049 (2d Cir. 1996).

As noted above, the present confirmation action does not present the only example of former Prime Minister Said Musa purporting to act without authority. The instant agreements are part of a larger corruption problem with the government of former Prime Minister Musa. Belize has a strong interest in making these agreements public (as the current Prime Minister has been doing) and adjudicating the instant claims. Even if the Convention itself does not provide grounds to dismiss, given these considerations, this Court should abstain and dismiss based on international comity. The United States should never become a forum to enforce, under the guise of the Convention, illegal agreements entered into by corrupt foreign government officials lacking authority.

The Convention is no obstacle to dismissal on comity grounds because it "contemplate[s] application of a signatory forum's procedural doctrines," *Figueiredo*, 665 F.3d at 392-93, and

because "abstention is a procedural doctrine," *API, Inc. Asbestos Settlement Trust v. Atlantic Mut. Ins. Co.*, 2011 WL 5244669 at *6 (D.Minn. 2011). Accordingly, this action should be dismissed in deference to the CCJ decision (the law of the land in Belize).

     E.     <u>THE MOTION TO DISMISS MUST BE DECIDED FIRST.  GOB HAS A RIGHT TO AN INTERLOCUTORY APPEAL PRIOR TO REACHING THE MERITS.</u>

     The foreign sovereign immunity decision must be fully adjudicated, and GOB has a right to an interlocutory appeal, prior to a decision on the merits.

     The United States Supreme Court has indicated that subject-matter jurisdiction determines "whether the court has the power to entertain a particular claim – a condition precedent to reaching the merits of a legal dispute." *Haywood v. Drown*, 556 U.S. 729, 129 S.Ct. 2108, 2126 (2009).  "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) (emphasis added). These principles are particularly applicable when foreign sovereign immunity is at issue.  "In order to preserve full scope of sovereign immunity, the district court must make critical preliminary determinations of its own jurisdiction as early in litigation against a foreign sovereign as possible." *Kilburn v. Socialist People's Libyan Arab*, 376 F.3d 1123, 1127 (D.C.Cir. 2004).

     Further, when foreign sovereign immunity is invoked, the foreign state defendant is entitled to protection from being involved in any part of the litigation process until there has been a final adverse ruling on the sovereign immunity defense.  *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992) ("[S]overeign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself."). GOB therefore would have a right to an interlocutory appeal from any order denying its motion to dismiss brought on sovereign immunity grounds, including an automatic stay of any further proceedings pending the appeal.  *BP Chemicals Ltd. v. Jiangsu Sopo Corp. (Group) Ltd.*, 420

F.3d 810, 818 (8th Cir. 2005) (citing *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d

1292,1297 (11th Cir. 2000)); *Moats*, 961 F.2d at 1201 ("the purpose behind collateral order

appeals from denials of FSIA immunity is to effectuate the guarantee that immune parties will

not become embroiled in litigation"); *Princz v. Federal Republic of Germany*, 998 F.2d 1 (D.C.

Cir. 1993) (per curiam).  Therefore, should the Court deny the motion to dismiss on immunity

grounds, GOB should be provided with an opportunity to take an interlocutory appeal before the

Court proceeds to the merits.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, the Petition should be dismissed.


Dated:  August 8, 2014                       Respectfully submitted,

                                             <u>   /s/ Creighton R. Magid                </u>
                                             CREIGHTON R. MAGID (Bar No. 476961)
                                             Dorsey & Whitney LLP
                                             1801 K Street, NW, Suite 750
                                             Washington, DC 20006
                                             (202) 442-3555
                                             magid.chip@dorsey.com

                                             JUAN C. BASOMBRIO (motion for admission
                                             pro hac vice to be filed)
                                             Dorsey & Whitney LLP
                                             600 Anton Boulevard, Suite 2000
                                             Costa Mesa, California 92626
                                             (714) 800-1405
                                             basombrio.juan@dorsey.com

                                             Counsel for Respondent
                                             **GOVERNMENT OF BELIZE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of August, 2014, I electronically filed the foregoing

Memorandum of Points and Authorities in Support of Motion to Dismiss Petition with the Clerk

of the Court for the United States District Court for the District of Columbia by using the Court's

CM/ECF system, which will send notice of such filing to the following registered CM/ECF

users:

Louis B. Kimmelman
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019

Kristin Graham Koehler
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005


    /s/ Creighton R. Magid
CREIGHTON R. MAGID