# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| THE BELIZE BANK LIMITED<br>60 Market Square, PO Box 364, Belize City,<br>Belize, Central America<br><br>　　　　　　Petitioner,<br><br>v.<br><br>THE GOVERNMENT OF BELIZE<br>Attorney General, Attorney General's Ministry<br>New Administration Building, Belmopan,<br>Belize, Central America<br><br>　　　　　　Respondent. | Civil Action No. 1:14-CV-00659-BAH |

### RESPONDENT GOVERNMENT OF BELIZE'S SUPPLEMENTAL BRIEF REGARDING THE IMPACT OF THE FEBRUARY 17, 2015, JUDGMENT OF THE BELIZEAN SUPREME COURT ON THE DISPUTED ISSUES IN THIS ACTION

Creighton R. Magid (D.C. Bar # 476961)
Dorsey & Whitney LLP
1801 K Street, NW, Suite 750
Washington, DC 20006
Telephone: (202) 442-3555
Facsimile: (202) 442-3199
magid.chip@dorsey.com

Juan C. Basombrio (admitted *pro hac vice*)
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone: (714) 800-1405
Facsimile: (714) 800-1499
basombrio.juan@dorsey.com

Counsel for Respondent
**GOVERNMENT OF BELIZE**

Pursuant to the Court's Minute Order dated April 2, 2015, Respondent Government of Belize ("GOB") submits this Supplemental Brief addressing the impact on the disputed issues in this action of the February 17, 2015, Judgment of the Supreme Court of Belize in *Belize Bank Limited v. Attorney General of Belize*, Claim No. 418 or 2013 (the "Belizean Judgment"). A true and correct copy of the Belizean Judgment is attached hereto as **Exhibit A**.

The Belizean Judgment is dispositive of this action and requires dismissal or denial of the Petition filed by The Belize Bank Limited (the "Bank"). The Supreme Court of Belize issued the Belizean Judgment in litigation *brought by the Bank* in Belize to enforce the *same* arbitration award that the Bank seeks to enforce in this action. The Supreme Court of Belize decided many of the critical issues involved in the instant litigation, including the unenforceability of the agreements upon which the arbitration award was based, the absence of authority of the former Prime Minister of Belize who signed the agreements to bind GOB, the absence of National Assembly approval required by the Belizean Constitution to give effect to the agreements, and the unenforceability of the agreements as violating Belizean public policy. The Supreme Court of Belize therefore denied confirmation of the arbitration award under Article VI(2)(b) of the Convention on the Recognition and Enforcement of Arbitral Awards (the "Convention"), which is codified in the United States at 9 U.S.C. §§ 201 *et seq.*

In light of the Belizean Judgment, the Bank's Petition in this Court should be denied or dismissed with prejudice based on principles of international comity and the doctrines of issue preclusion and claim preclusion.

## RELEVANT FACTS

On December 9, 2004, the former Prime Minister of Belize, Said Musa, signed a secret Guarantee and Postponement of Claim Agreement (the "Guarantee") in favor of the Bank, a private entity. The document guaranteed all the debts and liabilities owed to the Bank by

Universal Health Services Company Limited ("UHS"). *See* Declaration of Joseph Waight, Belizean Financial Secretary [ECF No. 12-3] ("Waight Decl.") ¶ 3. The Guarantee contained a confidentiality clause; consequently, no one in GOB apart from Musa and his close confidants was aware of it. *Id*. at ¶ 5. Important, no one in the National Assembly knew about it. *Id*.

When payment issues arose concerning the outstanding balance of UHS's debt to the Bank in the amount of BZ$33,545,820, Musa, purporting to act on behalf of GOB, and the Bank signed a Settlement Deed, which included a Loan Note. *See* Petition to Confirm Arbitration Award [ECF No. 1] ("Petition") ¶¶ 15-16. The Settlement Deed contained an arbitration clause. The Loan Note stated that GOB would pay the Bank the sum of $BZ 33,545,820, with interest, on demand or not later than September 23, 2007. Petition ¶¶ 17, 19.

Following elections in 2008, Musa's successor as Prime Minister made public the secret Guarantee, Settlement Deed and Loan Note, and challenged their constitutionality. The Bank, meanwhile, commenced an arbitration before the London Court of International Arbitration ("LCIA") on July 9, 2008, asserting breach of the Settlement Deed and Loan Note. Petition at ¶33. GOB unearthed credible information demonstrating bias and partiality in favor of the Bank on the part of the LCIA Tribunal. *See* Preliminary Response to Petition [ECF No. 13] ("Response") at 20-27. Despite this information, the LCIA refused to reconstitute the Tribunal. *Id*. Accordingly, GOB did not participate in the merits portion of the arbitration. *Id*.

On January 25, 2013, the Tribunal, proceeding without GOB's participation, rendered an arbitration award in favor of the Bank (the "Award") and ordered GOB to pay the Bank BZ$ 36,895,509.46, plus interest. *See* Petition ¶ 47.

On July 31, 2013, the Bank filed an action against the Attorney General of Belize in the Supreme Court of Belize, the court of first instance, seeking confirmation of the Award under the

2

Convention.  *See* Memorandum in Support of Motion to Dismiss the Petition [ECF No. 12-1] ("Motion to Dismiss") at 6.  The Belizean Judgment is the culmination of that action (the "Belizean Action").

On April 8, 2014, while the Belizean Action was pending, the Bank filed its Petition with this Court.  On April 18, 2014, GOB moved to dismiss the Petition on various grounds, including lack of subject matter jurisdiction (as GOB is immune from suit pursuant to the Foreign Sovereign Immunities Act) and the doctrine of international comity (because confirmation of the Award by this Court would be in direct conflict with existing Belizean law and would be contrary to the public policy of Belize).  *See* Motion to Dismiss at 30-33.

In addition to its Motion to Dismiss, GOB requested denial of the Petition.  Among other grounds, GOB sought denial of the Petition pursuant to Article V(1)(a) of the Convention because the Settlement Deed (including the purported agreement to arbitrate) is unconstitutional under Belizean law due to the former Prime Minister's lack of authority to bind GOB.  *See* Preliminary Response to Petition to Confirm Arbitration Award [ECF 13] ("Response") at 40-41.

On February 17, 2015, the Belizean Supreme Court issued the Belizean Judgment, a detailed and well-reasoned opinion that held in favor of the Bank on certain issues and in favor of GOB on other issues, but ultimately denied confirmation of the Award.  The Belizean Supreme Court's primary reason for denying confirmation of the Award was its holding that the Guarantee, Settlement Deed and Loan Note were void *ab initio* because the former Prime Minister lacked actual authority to execute these documents.  Specifically, the Belize Judgment held that "when considered against the extent of legislative financial controls of public expenditures [in Belize], *it is inconceivable that the Executive possessed the authority to bind the Government* to the expenditures [contained in the Settlement Deed and Loan Note] *without*

3

*Parliamentary approval*." Belizean Judgment ¶ 100 (emphasis added). The Court further found "that absent the approval of the National Assembly (the requirement for which a forceful case is made out by virtue of the existence of all the legislative restrictions and regulation surrounding the incurrence of debt), the expenditure created out of the Loan Note is not enforceable." *Id.* at ¶ 101. The Belizean Supreme Court continued:

> As a developing state, the Executive of Belize's adherence to the controls of public expenditure is of especially grave importance and of public interest to the security and well-being of the people of Belize. The award is to be enforced in Belize against its public purse, as opposed to between private entities. Further, the other party involved is domestic and not foreign, the relevance being that recommendations from the International Law Association on the public policy bar against enforcement of international arbitral awards, specifies that the pro enforcement bias is primarily concerned with awards which involve a material foreign element. The competing public policy of guaranteeing public confidence in the arbitral process and respecting the institutional fabric of the country where the award is to be enforced . . . is considered but found to be just outweighed when considering the interests of Belize as a developing state, in maintaining transparency and accountability in the Executive's handling of the country's public revenue.

*Id.* at ¶ 106 (internal citations omitted, emphasis added).

The Belizean Supreme Court, while acknowledging that "enforcement of a foreign or Convention award . . . must not be refused unless it infringes a fundamental principle," Belizean Judgment at ¶ 102, therefore held that enforcement of the Award would be contrary to public policy under the Convention. The Belizean Supreme Court concluded:

> With respect to the high threshold to be satisfied in declining to enforce a Convention Award, . . . the absence of any legislative oversight or intervention in the issue of the promissory note herein, relative to the degree of oversight prescribed by law in relation to incurrence of debt by means generally effected, compels the enforcement of this Arbitral Award as against public policy as it is harmful to the interests of Belize. In the circumstances the Court declines to order enforcement.

Belizean Judgment at ¶ 107.

4

**ARGUMENT**

A. **Principles of International Comity Warrant Denial of the Bank's Petition.**

Principles of international comity require this Court to give effect to the Belizean Judgment, including the holdings that the former Prime Minister lacked authority to bind GOB to the Settlement Deed and Loan Note, that the Settlement Deed is invalid under the laws of Belize, and that enforcement of the Award is contrary to public policy.

International comity is "the recognition which one nation allows within its territory to the judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Preclusive effect is given to a foreign judgment where "there has been an opportunity for a full and fair trial in a foreign court of competent jurisdiction under a system of justice that does not offend United States public policy." *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19 (D.C. Cir. 2007); *see also Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895) (comity granted to foreign judgment when it appeared to have been rendered by competent court having jurisdiction and parties were given opportunity to defend); *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981) (international comity requires giving "full effect" to foreign judgments); *Cunard S.S. Co. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 457 (2d Cir. 1985) ("Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state ... will not be violated"); *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329 (Fed. Cir. 2001) (courts will "extend comity to foreign proceedings when doing so would [not] be contrary to the policies or prejudicial to the interests of the United States"); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1330-31 (S.D.N.Y. 1997) (in dispute arising Saudi Arabian investors' investment in Netherlands Antilles corporation, under federal law of issue preclusion, French judgment barred

action since issues were sufficiently identical and were actually litigated; moreover, issue preclusion was supported by policy considerations fostering stability and unity, and France had a greater interest in the litigation as home country to the dispute).

The Bank's Petition in this case should be dismissed based on international comity, for several reasons.

First, international comity requires dismissal of the Petition because a finding of subject matter jurisdiction by this Court would create a direct conflict with the law of Belize as set forth in the Belizean Judgment. Where the exercise of jurisdiction would create a conflict with foreign law, principles of international comity compel a court to abstain from exercising jurisdiction. *See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd.,* 772 F.Supp.2d 205, 210 (D.D.C. 2011) (a court will abstain from exercising jurisdiction in the interests of international comity where "there is a true conflict between domestic and foreign law.") (quoting *Sarei v. Rio Tinto, PLC,* 487 F.3d 1193, 1211 (9th Cir. 1997)); *In re Maxwell Communication Corp.,* 93 F.3d 1036, 1047 (2d Cir. 1996) ("International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction.").

In order to exercise subject matter jurisdiction in this matter, the Court would necessarily have to conclude that confirming the Award did not violate public policy, since violation of public policy is a defense to confirmation under the Convention – a defense raised by GOB. Stated differently, to find that it had jurisdiction to confirm the Award, the court would have to conclude that public policy did not preclude confirmation – a finding that would be directly contrary to the Belizean Supreme Court's finding that confirmation of the Award would violate public policy under Belizean law.

Similarly, in order for this Court to confirm the Award, it would have to hold that former Prime Minster Musa was authorized under Belizean law to execute the Guarantee, the Settlement Deed and the Loan Note. Such a finding would be in direct conflict with the holding in the Belizean Judgment that Musa lacked such authority under Belizean law.

This is precisely the type of situation where dismissal of an action in the United States is necessary under international comity principles to give effect to the judgment of a foreign court and not affront a friendly foreign sovereign like Belize, which has a greater interest in adjudicating the dispute than does the United States. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir. 1984) (explaining that "the central precept of comity teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts").

Second, the facts of this case militate strongly in favor of dismissal under the doctrine of international comity. The Bank itself initiated and fully litigated the action in Belize; it can hardly be heard to complain about the forum. The parties in the two cases are identical. Moreover, the primary issues in this case and in the Belizean Action are identical: GOB argues in this case that former Prime Minister Musa lacked authority to bind GOB to the Settlement Deed and the Loan Note, that the Settlement Deed violates Belizean law, and that enforcement of the Award is contrary to Belizean public policy – the precise issues decided in the Belizean Action.

Further, the LCIA rendered the Award under the laws of Belize. The Belizean Supreme Court is better suited than this Court to apply Belizean law and to adjudicate the important Belizean legal issues that are the gravamen of this dispute, including whether former Prime Minster Musa was authorized to execute the documents that resulted in the Award.

Third, it is clear that Belize has a greater interest than the United States in adjudicating the issues at hand, precisely because they deal with a former high-level Belizean public official's secret and corrupt actions in violation of Belizean law. If the roles were reversed and the issue was whether a United States government official had acted in violation of United States law, the United States would request that Belizean courts yield to United States courts. *See Pravin Banker Assocs. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir. 1997) ("courts in this country have long recognized the principles of international comity . . . in order to promote cooperation and reciprocity with foreign lands.").

Fourth, this action does not implicate the "public policy" exception to the exercise of international comity. The public policy exception to international comity is "a narrow one," *Ricart v. Pan Am. World Airways, Inc.*, case No. 89–0768, 1990 WL 236080 (D.D.C. Dec. 21, 1990), and is inapplicable to this action. "For a foreign court's decision to be contrary to U.S. public policy, it must be 'repugnant to fundamental notions of what is decent in the State where enforcement is sought.'" *TermoRio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp.2d 87, 101 (D.D.C. 2006), citing *Tahan*, 662 F.2d at 864 (quoting Restatement (Second) Conflict of Laws § 117 cmt. c (1971)); see also *Somportex v. Phila. Chewing Gum*, 453 F.2d 435, 443 (3d Cir. 1971) (a judgment is repugnant to U.S. policy if it tends to "undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property"); *LG Display Co. Lt.d v. Obayashi Eikou Co., Ltd.*, 919 F. Supp.2d 17, 31 (D.D.C. 2013) ("a foreign judgment is repugnant only if 'the cause of action in its nature offends our sense of justice or menaces the public welfare'") (quoting *Loucks v. Std. Oil Co.*, 224 N.Y. 99, 110 (1918)). That is not the situation here. Rather, the Belizean Judgment is consistent with United States public policy. The Belizean Judgment

upheld the importance of separation of powers, transparency, and the rule of law. These principles are also at the core of the United States legal system.

Fifth, the doctrine of international comity emphasizes the importance of deference to a foreign court's decision on issues in dispute. For example, in *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298 (11th Cir. 2008), a stock purchaser sued GOB, alleging that GOB had improperly removed six directors from a board and appointed new directors in their place. The district court refused to recognize and give effect to a Belizean Court of Appeals decision on the issue whether GOB could take such actions under Belizean law. The Eleventh Circuit reversed, holding that "international comity principles indicate that deference to the Belizean decision is appropriate." *Id.* at 1304-1309.

Under the doctrine of international comity, this Court should defer to the Belizean Judgment's holdings that the former Prime Minister lacked authority to bind GOB to the Settlement Deed, and that the Loan Note and the Award are contrary to Belizean public policy. As a result, the Bank's Petition must be dismissed or denied under Article V(1)(e) of the Convention.

**B.     The Doctrine of Collateral Estoppel Requires That Recognition and Enforcement of the Arbitration Award Be Denied.**

The Belizean Judgment's adjudication that the former Prime Minister lacked authority to bind GOB to the Settlement Deed and Loan Note, that the Settlement Deed violates Belizean law, and that the enforcement of the Award is contrary to public policy must be afforded collateral estoppel effect between the Bank and GOB. As a result, the Bank Petition must be dismissed for lack of subject matter jurisdiction and under Article V(1)(a) of the Convention.

Under the doctrine of collateral estoppel – also known as issue preclusion – a party is prevented from re-litigating identical issues that it previously litigated and lost. *See Jack Faucett*

*Associates, Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). The doctrine of issue preclusion applies where:

- The issue was actually litigated;

- The issue was actually and necessarily determined by a court of competent jurisdiction in the first trial; and

- Preclusion in the second action would not result in unfairness.

*See Jack Faucett Associates* at 125. The issues decided in the Belizean Judgment satisfy that test.

The authority of former Prime Minister Musa to bind GOB to the Settlement Deed and Loan Note, the legality of the Settlement Deed under Belizean law, and whether the enforcement of the Award is contrary to public policy are all critical issues in this case – and issues fully litigated by the Bank for nearly two years in the Belizean Action and decided by the Belizean Supreme Court in the Belize Judgment.

That the Supreme Court of Belize is a court of competent jurisdiction is not in dispute; after all, it was the Bank that filed the Belize Action in Belize, and there is no argument that the court lacked jurisdiction to decide the issues placed before it by the Bank.

Precluding re-litigation of Musa's authority, the documents' legality, and whether enforcement of the Award is contrary to public policy would not be unfair. Nor has U.S. public policy been violated by the Belizean Judgment. The issues adjudicated by the Belizean Supreme Court were central to that court's decision, and also are central to whether the Award may be enforced by this Court. The Belizean Supreme Court issued a well-reasoned decision, interpreting Belizean law in the context of the Convention. There is no plausible way to argue that applying collateral estoppel here would be contrary to the public policy of the United States.

Just as issues decided by other United States courts are given preclusive effect, issues litigated in foreign tribunals or courts are likewise granted preclusive effect in actions brought in the United States. *See, e.g., Flota Maritima Browning de Cuba, Sociedad Anonima v. Motor Vessel Ciudad de la Habana*, 218 F. Supp. 938, 942 (D. Md. 1963) (applying issue preclusion to Canadian court judgment); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (issue preclusion applies to judgments issued by foreign courts); *Hurst*, 474 F. Supp.2d at 31-32 (principles of issue preclusion and comity merited giving preclusive effect to Scottish judgment in action pending in U.S.); *Csepel v. Republic of Hungary*, 808 F. Supp.2d 113, 144-45 (D.D.C. 2011) (rulings in Israeli litigation had preclusive effect in District Court action).

For example, in *Tahan*, the plaintiff, an Israeli travel agent, obtained a default judgment against the defendant in Israel and sought to enforce the judgment in the U.S. Defendant argued that the Israeli court's judgment was unenforceable because he was not properly served; he did not receive a second notice at least three days prior to hearing and application for default judgment; and the Israeli court did not provide a compelling justification to pierce the corporate veil and enter judgment against him personally. *Tahan*, 662 F.2d at 864. While the D.C. Circuit Court of Appeals found these arguments to be "by no means unreasonable," *id.* at 866, and that the Israeli court's decision was at odds with U.S. law, the D.C. Circuit found that the Israeli decision was not "repugnant" to U.S. law and upheld enforcement of the judgment. *Id.* The D.C. Circuit further held that "[w]hile the public policy is not moribund, it is in fact rarely relied upon [and should be used] only in clear-cut cases..." *Id.* at 866 n. 17 (citations omitted). None of these concerns is present in the case at bar.

For these reasons, this Court should afford collateral estoppel effect to the Belizean Judgment's holdings that former Prime Minister Musa lacked authority to bind GOB to the

11

Settlement Deed and Loan Note, that the Loan Note violates Belizean law, and that enforcement of the Award is contrary to Belizean public policy.[1]

### C. Principles of *Res Judicata* Also Require That Recognition and Enforcement of the Arbitration Award Be Denied.

Under the doctrine of *res judicata* – also known as claim preclusion – a final judgment on the merits precludes the parties or persons in privity with them from re-litigating the same claim. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

The following elements must be present for a claim to be barred as a result of a judgment in a prior action: (1) there must have been a final judgment on the merits; (2) the prior action must have involved the same parties or their privies; (3) the prior action must have involved the same claim; and (4) the judgment in the prior action must have been rendered by a court of competent jurisdiction. *See Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).

These factors strongly support giving the Belizean Action *res judicata* effect. The Belizean Judgment is a final judgment on the merits: the Belizean Supreme Court held that the Award cannot be enforced under the Convention. The Belizean Judgment is not a procedural decision, and it is the current law of the land in Belize. A judgment or order, once rendered, is final for purposes of preclusion until it is reversed, modified or set aside. *See Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938) (holding that for purposes of res judicata, a "decision is 'final until

---

[1] The doctrines of claim and issue preclusion are also applicable under Belizean law—a fact conceded by the Bank itself. *See* Declaration of Eamon Courtenay, filed in support of the Bank's Petition [ECF No. 22-17], at ¶ 6 ("The doctrine of *res judicata* is applied by the courts of Belize to prevent the relitigation of claims or issues that were, or could have been, litigated in a prior action." The Courtenay Declaration goes on to cite the Belize Court of Appeal case *Belize Port Authority v. Eurocaribe Shipping Services et al.*, Civil Appeal No. 13 of 2011, which discusses the applicability of the doctrines of "cause of action estoppel" and "issue estoppel").

reversed in an appellate court, or modified or set aside in the court of its rendition.'") (quoting *Deposit Bank v. Frankfort*, 191 U.S. 499, 520 (1903)).

The Belizean Action involved the same parties. The Bank commenced both this litigation and the Belizean Action, for the same purpose – and fully litigated both actions. GOB was a party to the Belizean action, through its attorney representative, the Attorney General of Belize, and is a party to this action.

The Belizean Judgment involved the same claims: enforcement of the Award under the Convention. The Belizean Supreme Court denied confirmation based on the Convention; the Bank seeks confirmation here based on the Convention.

The Belize Judgment was rendered by a court of competent jurisdiction. In fact, the Bank selected Belize as an appropriate forum before commencing this action.

Finally, it is appropriate to apply the doctrine of *res judicata* to a foreign court judgment. *See, e.g., Guinness PLC v. Ward*, 955 F.2d 875, 893 n. 14 (4th Cir. 1992) ("*res judicata* effect has . . . traditionally been afforded foreign country judgments entitled to recognition consistently with principles of comity"); *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 697 (7th Cir. 2009) (American courts apply the doctrine of *res judicata* to foreign judgments).

Accordingly, under *res judicata* principles, the Belizean Judgment bars the Bank from re-litigating, in this action, whether the Award may be enforced against GOB. The Bank's Petition must be dismissed or denied.

## CONCLUSION

For the foregoing reasons, in light of the Belizean Judgment, the Bank's Petition must be dismissed or denied.

| | |
|---|---|
| Dated: April 23, 2015 | Respectfully submitted, |
| | |
| | */s/ Creighton R. Magid* |
| | Creighton R. Magid (D.C. Bar # 476961) |
| | Dorsey & Whitney LLP |
| | 1801 K Street, NW, Suite 750 |
| | Washington, DC 20006 |
| | Telephone:  (202) 442-3555 |
| | Facsimile:  (202) 442-3199 |
| | magid.chip@dorsey.com |
| | |
| | Juan C. Basombrio (Admitted *pro hac vice*) |
| | Dorsey & Whitney LLP |
| | 600 Anton Boulevard, Suite 2000 |
| | Costa Mesa, California 92626 |
| | Telephone:  (714) 800-1405 |
| | Facsimile:  (714) 800-1499 |
| | basombrio.juan@dorsey.com |
| | |
| | Counsel for Respondent |
| | **GOVERNMENT OF BELIZE** |

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on April 23, 2015, I caused to be filed electronically the foregoing RESPONDENT GOVERNMENT OF BELIZE'S SUPPLEMENTAL BRIEF REGARDING THE IMPACT OF THE FEBRUARY 17, 2015, JUDGMENT OF THE BELIZEAN SUPREME COURT ON THE DISPUTED ISSUES IN THIS ACTION with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system and accomplished service via the same.

                                               /s/ Creighton R. Magid
                                               Creighton R. Magid